EDMOND L. HANRIHAN *vs.* JOHN J. HANRIHAN & others.

Suffolk. February 8, 1961. — May 4, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Trust,* Resulting trust, Of corporate stock. *Contract,* What constitutes, As to corporate stock. *Evidence,* Extrinsic affecting writing. *Equity Pleading and Practice,* Decree, Waiver, Parties. *Waiver. Limitations, Statute of. Laches. Equity Jurisdiction,* Laches. *Frauds, Statute of.*

In a suit in equity by five plaintiffs against several defendants, a decree dismissing the bill with prejudice as to four of the plaintiffs "in so far as it affects in any way . . . or asserts any rights or claims by, for or in behalf of them," assented to by all the parties to the suit with an irrevocable waiver of all rights of appeal, amounted to a complete and final withdrawal from the controversy by the four plaintiffs and on the record resulted in a narrowing of the issues to a single controversy between the remaining plaintiff and one of the defendants. [563–564]

At the trial of a suit in equity to compel the defendant to transfer to the plaintiff, his brother, one half of a number of shares of stock in a family business corporation issued to the defendant in excess of the number of shares issued to the plaintiff following negotiations before organization of the corporation culminating in assent by all interested persons to a written proposal respecting distribution of stock to the brothers and other members of the family, there was on the record no error in considering parol evidence to show an oral collateral understanding as to the voting of the excess shares issued to the defendant and ultimate transfer of one half of the excess shares to the plaintiff. [564]

In a suit in equity by one of two brothers who had conducted a family business to compel the other brother to transfer to the plaintiff twenty-five shares of common voting stock of a corporation formed to continue the business, a conclusion that the defendant held such shares upon a resulting trust for the plaintiff was warranted where it appeared that

both brothers contributed equal interests in the business in forming the corporation, that all the common stock was issued to them but that the defendant was issued fifty more shares than the plaintiff as security for payment of back salary treated as a debt of the corporation and on the understanding that on payment thereof the fifty shares would be "equally divided" between the brothers, that thereafter such debt was paid in full by less withdrawals of money from the corporation by the plaintiff than by the defendant, that after payment thereof withdrawals were equal, that the defendant voted no more stock than the plaintiff, and that the defendant had stated that he and the plaintiff "owned the common stock and controlled the corporation" and "were equal partners." [565–566]

The statute of limitations, G. L. c. 260, § 2, was not a bar to a suit in equity to enforce a resulting trust in corporate stock commenced within six years after a repudiation of the trust by the defendant trustee although more than six years after creation of the trust. [567]

Laches was not a defence to a suit in equity to enforce a resulting trust in corporate stock commenced two years after repudiation of the trust by the defendant trustee where such interval was used in an effort to avoid litigation and the death of a prospective witness handicapped the plaintiff's claim equally with the defendant's defence. [567]

The statute of frauds is not applicable to a resulting trust. [567]

BILL IN EQUITY, filed in the Superior Court on July 9, 1951.

The suit was heard by *Paquet, J.*

*Edward B. Hanify,* (*Richard W. Southgate* with him,) for the defendants.

*Arthur M. Gilman,* (*Walter H. McLaughlin, Jr.,* with him,) for the plaintiff.

KIRK, J. This is a bill in equity to compel the defendant John J. Hanrihan to deliver to the plaintiff, Edmond L. Hanrihan, twenty-five shares of the common capital stock of the Albany Carpet Cleaning Company, hereinafter referred to as the corporation, and to require the corporation to record on its stock transfer books the transfer from John to Edmond.

The present defendants, who are John, the corporation, and the directors of the corporation, have appealed from interlocutory decrees overruling their demurrers and from a final decree granting to Edmond the relief prayed for.

The judge found the following facts: James E. Hanrihan, the founder of the carpet cleaning business, was the father of six children, including John and Edmond. Of the other four children, three were girls and one a younger boy. The

father died intestate in 1914. Surviving him were his widow, who became the administratrix of his estate, and the six children. The assets of his estate were never distributed. In 1920, the widow died intestate, survived by the six children. Each child thus owned a one-sixth interest in the estates of the parents which consisted entirely of the carpet cleaning business. John, the oldest, was appointed administrator of his mother's estate, and carried on the business assisted by his brother Edmond and three uncles.

In 1924, the business was incorporated. The litigation centers upon the discussions and events leading up to the incorporation. A dispute arose between John and Edmond concerning the control of the planned corporation. Edmond said that they should have equal control of and equal rights in the corporation whereas John asserted that he should have a majority of the voting stock and be in control of the corporation because he was the oldest and had been more active in the business management of the enterprise whereas Edmond had devoted most of his time to shop operations. Their uncle Edmond L. Grimes acted as mediator throughout this period of controversy and undertook to establish a plan whereby all of the children would be treated fairly. It was agreed that each of the children would contribute to the corporation the one-sixth interest which each had in the parents' estates. The corporation was to issue two classes of stock, preferred and common. Only John and Edmond were to have the common voting stock. The other four children were to share equally all of the preferred stock, after allowing for a nominal share of preferred stock to each member of the board of directors. The core of controversy was the division of the common stock between John and Edmond. Among other things it was determined that a "salary differential" had developed during the years John and Edmond had conducted the business whereby $5,000 more in back pay was owed to John than was owed to Edmond. Edmond L. Grimes proposed several plans of stock distri-

bution (these proposals were printed on galley sheets by
Grimes, a printer, and some of them are in evidence) which
were rejected by John because they did not give him control
of the corporation.

The judge found: ''Early in 1924 the negotiations reached
a point which appeared to be satisfactory to all concerned,
and Edmond L. Grimes drafted a proposal which was dis-
cussed and agreed upon by Edmond and John Hanrihan,
and the uncle's attorney was then instructed to draft the
necessary papers to incorporate the rug cleaning busi-
ness.'' On the basis of this written proposal and a col-
lateral oral understanding which the judge established on
conflicting testimony, the judge concluded that the agree-
ment as to stock distribution was as follows: ''John . . .
[would receive] fifty-two and one half per cent (52 ½%)
of the common stock amounting to five hundred twenty-five
(525) shares, and Edmond . . . [would receive] forty-
seven and one half per cent (47 ½%) of the common stock
— namely, four hundred seventy-five (475) shares. I find
that it was the understanding that the five per cent (5%)
common stock differential in favor of John would be voted
by the Board of Directors, and when the back salary of
Five Thousand Dollars ($5,000) had been fully paid to
John this five per cent (5%) of the common stock would be
equally divided between John and Edmond.'' The articles
of organization signed by Edmond while he was at Saranac,
New York, for reasons of health show that John was issued
525 and Edmond 475 shares of common stock. The back
salary differential was adjusted in 1927. The judge found
''that John and Edmond continued to run the corporation
on an equal basis, both with respect to authority and salary,
. . . until 1949 when John violated his agreement . . . to
turn over one half of the fifty (50) shares of common stock
. . . [and] to share equally with Edmond and that at-
tempts to adjust this dispute met with no success, where-
upon Edmond commenced action in 1951.'' The judge con-
cluded that Edmond was not guilty of laches and was not
barred by the statute of limitations.

At this point it is important to give a resume of the history of this protracted litigation. In the original bill in equity, filed July 9, 1951, the plaintiffs were Edmond and his younger brother James; and the defendants were John, the corporation, the directors, and the three sisters. By amendment, filed and allowed in January, 1952, the three sisters joined Edmond and James as plaintiffs. Following a hearing on the merits, the judge on March 18, 1954, made findings of fact in which he concluded, in substance, that, because of a breach of trust by John as administrator of his mother's estate, John, Edmond and the corporation were constructive trustees for the benefit of the other four children of the assets of their parents' estates which the four children had contributed to the corporation. On July 1, 1955, a motion for rehearing, restricted to the issues of laches and the statute of limitations, was allowed. After rehearing, revised findings by the judge were filed October 23, 1956. He reiterated his finding that John had violated his fiduciary duty to the three sisters and the young brother James but ruled that they were barred by laches and the statute of limitations. He made the findings, hereinbefore referred to, regarding Edmond's claim against John. On September 30, 1957, a decree with prejudice, assented to by all of the parties, was entered dismissing the bill as to the three sisters and the younger brother "in so far as it affects in any way . . . or asserts any rights or claims by, for or in behalf of them." In explicit terms on the face of the decree they irrevocably waived all rights of appeal. We construe this decree as a formal renunciation by the brother and sisters of any and all interest in the subject matter of the litigation before us. We regard it as a complete and final withdrawal by them from the field of controversy, leaving only John and Edmond as the contestants and the ownership of twenty-five shares or two and one half per cent of the common stock as the sole bone of contention between them. We think that is what John and Edmond intended by assenting to the decree. Our view in this respect is confirmed by the fact that the matter desig-

nated for printing relates only to the question of ownership of the twenty-five shares. In consequence we shall consider only the findings of the judge which relate to that issue.

The purpose of designations is to achieve an abbreviated record which is to be treated as a report of all the evidence. *Cohen* v. *Santoianni,* 330 Mass. 187, 190. See *Everett* v. *Capitol Motor Transp. Co. Inc.* 330 Mass. 417, 420. So treated, our duty is to examine the evidence and decide the case according to our own judgment, accepting the findings of the trial judge, whether based wholly or partly upon oral testimony, as true, unless they are shown to be plainly wrong, and finding for ourselves such other and additional facts as we deem to be justified by the evidence. *Berry* v. *Kyes,* 304 Mass. 56, 57–58. *Carroll* v. *Markey,* 321 Mass. 87, 87–88. *LeBlanc* v. *Molloy,* 335 Mass. 636, 637. We cannot say that the judge was plainly wrong in his finding as to the agreement for stock distribution. It must therefore stand.

The parol evidence rule did not bar consideration of evidence other than the proposals printed on galley sheets and the incorporation papers. ''Parol evidence rightly was received in this suit in equity to show the real nature of the transaction between the parties.'' *McCarthy* v. *Fitzgerald,* 296 Mass. 181, 183. There was no indication that the parties intended to be bound by the statements in the galley sheets and the incorporation papers; parol evidence therefore was admissible to determine whether there was an agreement, and whether a particular writing had been assented to as a complete and accurate integration of that agreement. The judge was not wrong in finding that none of the writings represented the actual agreement. The evidence disclosed a series of negotiations which culminated in the agreement found by the judge. *Caputo* v. *Continental Constr. Corp.* 340 Mass. 15, 18–19, and cases cited. *Cotty* v. *Meister,* 339 Mass. 202, 204–205. See *Farmer* v. *Arabian Am. Oil Co.* 277 F. 2d 46, 49.

The questions remain whether Edmond was entitled to the relief granted by the decree and whether he was barred by the statute of limitations, or laches, or the statute of frauds. We think the judge was right in resolving these issues against John.

It has been argued on John's behalf that if there was an agreement in 1924, whereby John was obliged to turn over to Edmond the twenty-five shares of stock when John received the $5,000 back pay "differential," the fact that John did receive the $5,000 in 1927 and did not then turn over the twenty-five shares constituted a breach of the agreement for which an action of contract would lie and since more than six years have elapsed the claim of Edmond is now barred by the statute of limitations. G. L. c. 260, § 2. We do not think that this plausible analysis reflects the true nature of the transaction entered into by the brothers.

We are of the opinion that the transaction is in the nature of a resulting trust pro tanto. We think that the shares which John took in his own name above fifty per cent were impressed with a trust in favor of Edmond. The aim of John and Edmond was the acquisition of one thousand shares of stock with voting power. Each contributed his equal share in his parents' estates to that end. This fact, the character of the transaction itself (see Scott, Trusts [2d ed.] § 404.1), gives rise to the inference that Edmond did not intend that John should have the beneficial interest in any of the shares purchased by Edmond. "If . . . [one] pays a real aliquot part of the purchase price, one half . . . etc., . . . [there is] no difficulty in holding that presumptively it was intended that he should have a corresponding aliquot part of the property purchased, and . . . [is] entitled to recover such an interest, even though no other evidence is offered as to the intention of the parties." Scott, Trusts (2d ed.) § 454, p. 3065, citing Root v. Blake, 14 Pick. 271, and Hayward v. Cain, 110 Mass. 273. Restatement 2d: Trusts, § 454, and comments. The equivalence of the contribution of the two brothers by giving their equal

shares in the estates justified a finding that a resulting trust pro tanto arose in favor of Edmond, who paid one half of the consideration, against John. *Magee* v. *Magee,* 233 Mass. 341. Cf. *Druker* v. *Druker,* 308 Mass. 229. See *Brady* v. *Brady,* 238 Mass. 302. The inference of intent may of course be rebutted but it seems to us to be amply supported, rather than rebutted, by the other evidence in the case. For example, the services which John had given to the business prior to incorporation were treated by the parties, not as a contribution by him to the corporation which might entitle him to more shares, but as creating a debt on the part of the corporation to him. The inference is also supported by the precautions admittedly taken by the parties to insure equality of voting power while the indebtedness to John was outstanding, namely that each was to have voting power as to forty-seven and one half per cent of the stock. It is confirmed by the testimony of Edmond as to what the agreement was. It is strengthened by the admission of John to his sisters in 1934 that "[he] and Edmond owned the common stock and controlled the corporation" and to a friend in 1938 that he and Edmond "were equal partners." It is substantiated by the fact that it does not appear that John voted more than forty-seven and one half per cent of the stock and by the further fact that once the $5,000 debt was seasonably paid to John (and this was accomplished by Edmond drawing less money from the corporation) the brothers in the years which followed drew equal sums.

The arrangement for the payment of the corporation's debt to John did not alter the essential nature of Edmond's interest in the two and one half per cent of the shares. This was merely an ancillary security transaction for the benefit of John who had bare legal title to the two and one half per cent of the shares for security purposes. *Newton* v. *Fay,* 10 Allen, 505. *Reeve* v. *Dennett,* 137 Mass. 315, 316. *McCarthy* v. *Fitzgerald,* 296 Mass. 181, 183–184. The beneficial interest remained and still remains in Edmond because of the resulting trust.

It is settled that the statute of limitations does not run as to a resulting trust until there has been a repudiation by the trustee. *Lufkin* v. *Jakeman,* 188 Mass. 528, 530–531. *Boston & No. St. Ry.* v. *Goodell,* 233 Mass. 428, 438. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 339. *Quinn* v. *Quinn,* 260 Mass. 494, 497. See *O'Brien* v. *Hovey,* 239 Mass. 37, 43. *Akin* v. *Warner,* 318 Mass. 669, 676. The judge has found that John in 1949 "violated his agreement with Edmond . . . to turn over one half of the fifty (50) shares of common stock." We construe this to mean a repudiation of the resulting trust which we have found. Inasmuch as the bill has been brought within the statutory period after the repudiation, the plaintiff is not barred by the statute.

Nor is the plaintiff barred by laches which is a question of fact. *Shea* v. *Shea,* 296 Mass. 143, 147. *Suburban Land Co. Inc.* v. *Billerica,* 314 Mass. 184, 191. A party is not guilty of laches if he acts with reasonable promptness after the repudiation of a resulting trust by the trustee. *Boston & No. St. Ry.* v. *Goodell,* 233 Mass. 428, 438. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 339. *Quinn* v. *Quinn,* 260 Mass. 494, 497. See *O'Brien* v. *Hovey,* 239 Mass. 37, 42; *Stewart* v. *Finkelstone,* 206 Mass. 28, 36–37. The interval between the repudiation and the commencement of the suit was found by the judge to have been used in an effort to avoid litigation. It is particularly urged upon us, however, by John that the death of Edmond L. Grimes handicaps his defence. See *Garfield* v. *Garfield,* 327 Mass. 529. The record leads us to believe that it at least equally handicaps Edmond's claim. In the circumstances we regard this bill as a prompt and proper response by Edmond to John's repudiation of his obligation to Edmond. All the principals to the transaction in 1924 were before the judge who tried the issues. The rights of third parties are not involved.

The statute of frauds is not applicable to a resulting trust. *Brady* v. *Brady,* 238 Mass. 302, 304. Restatement 2d: Trusts, § 40, comment d; § 440, comment c.

The appeal from the final decree raises the same questions as the appeals from the interlocutory decrees overruling the demurrers.  It is therefore unnecessary to discuss the latter.  The interlocutory decrees and the final decree are affirmed.

*So ordered.*