RALPH SULMONETTI & others[1] *vs.* FRANK HAYES & others.[2]

Worcester. January 6, 1964. — April 30, 1964.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Contract,* Agreement not to compete. *Unfair Competition. Unlawful Interference. Good Will. Equity Pleading and Practice,* Decree, Suit to enforce agreement not to compete, Suit to enjoin unfair competition.

An express covenant by a seller of a fuel oil business not to engage in such a business for ten years in the county where the business sold was located was reasonable and enforceable; a certain decree in equity enforcing the covenant should be modified in certain respects to conform to it. [395]

Where it appeared in a suit in equity that, after sale of a fuel oil business and employment of the seller by the buyer as manager of the business at the premises where it had been conducted, the seller's wife,

---

[1] The other plaintiffs are Hayes Oil Corporation (Hayes Oil) and Central Oil Company of Worcester (Central Oil).

[2] The other defendants are Emily Hayes, wife of the defendant Frank, Emma F. Hayes, mother of Frank, and Grafton Oil Company, Inc. The bill was dismissed as to the defendant Emma F. Hayes, and there has been no appeal from that aspect of the decree by the plaintiffs.

conniving with him while he was still so employed, deliberately sought to appropriate the good will of the business by means of a corporation organized and owned by her to operate a fuel oil business at the same premises, solicitation of customers of the business sold to become customers of the corporation, in which she made use of the buyer's customer list, and otherwise, it was held that, although she had not been a party to the sale, she was engaging in unfair competition with the business sold entitling the buyer to a decree enjoining her, for the same period as that specified in an express covenant against competition by the seller in the contract of sale, from soliciting customers of the business sold and from engaging in the fuel oil business in the municipalities in which the customers of the business sold lived.   [395–397]

BILL IN EQUITY filed in the Superior Court on January 12, 1962.

The suit was heard by *Good, J.*

*Dominic A. Caronna (Ernest S. Hayeck* with him) for the defendants.

*Edward J. McCabe* for the plaintiffs.

KIRK, J.  ·This is an appeal by the defendants Frank Hayes (Frank) and Emily Hayes (Emily), and Grafton Oil Company, Inc. (Grafton Oil), from a final decree which (a) enjoined Frank and Emily from engaging in the oil business in Worcester County for ten years from February 2, 1960, and from in any way soliciting oil customers of any of the plaintiffs, and (b) enjoined Grafton Oil, its officers, servants, and agents from soliciting in any way the oil customers of the plaintiffs.

The judge was not requested to file a report of the material facts under G. L. c. 214, § 23, as appearing in St. 1947, c. 365, § 2.  He did, however, file a voluntary statement of findings of fact.   We have a report of the evidence pursuant to designations made under Rule 2 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 693, which is to be treated as a report of all the evidence.   *Hanrihan* v. *Hanrihan,* 342 Mass. 559, 564, and cases cited.   So treated, it is our duty to examine the evidence and decide the case according to our own judgment, accepting as true the findings of the trial judge, whether based wholly or partly upon oral evidence, unless they are shown to be plainly wrong, and finding for ourselves such other

and additional facts as we deem to be justified by the evidence. *Carroll* v. *Markey*, 321 Mass. 87, 87–88. *Hanrihan* v. *Hanrihan*, 342 Mass. 559, 564, and cases cited. We accordingly summarize the findings made by the judge and by us, augmented by admitted or undisputed facts in the report of the evidence, in order to pass upon the propriety of the relief granted in the decree.

In 1950, upon the death of his father, Frank, then twenty-six years old and married, took over the operation of S. J. Hayes & Son, the name under which his father had been engaged for many years in the retail fuel oil business in North Grafton. Frank had been identified with his father in the business since 1945. The business at all times was conducted from the Hayes residence which was owned by Frank's mother. The property consisted of a large house and yard. The business office was on the first floor of the dwelling. In the yard were five fuel oil storage tanks, two of 12,000 gallon capacity, one of 10,000 gallon capacity, and two of 5,000 gallon capacity. Frank's wife, Emily, who had participated in the business to a limited extent prior to the father's death, actively assisted her husband after 1950, particularly in receiving and processing telephone orders for oil and in collecting bills. Emily's business aptitude, interest, and capabilities were greater than those of her husband. The business employed two truck drivers and a part time bookkeeper. Fifty per cent of the Hayes customers lived in North Grafton; the remainder lived in Shrewsbury, Grafton Center, Worcester, and Millbury.

Under Frank's management the business was not a success. By 1960 the liabilities were nearly $43,000; the tangible assets consisted of three or four used trucks, some fuel oil, and office equipment. The accounts receivable were estimated at $19,000. One of the principal creditors was the plaintiff Central Oil of which the plaintiff Sulmonetti was an officer.

On February 3, 1960, Frank by a writing sold the business to Sulmonetti (the buyer). The agreement expressly recognized that the Hayes oil business was in financial diffi-

culty. The buyer bought the assets and the good will, including the right to use the name Hayes in any reasonable variation, and agreed to pay off the scheduled liabilities of the business, to exonerate Frank from liability, and to employ Frank on mutually agreeable terms. Frank agreed not to ''reenter the business of selling fuel oil in any capacity, directly or indirectly, or compete with Buyer in the fuel oil business in any way in Worcester County for a period of ten (10) years'' after the date of the agreement, or after he ceased working for the buyer, whichever event occurred later. As separate compensation for the agreement not to compete the buyer paid Frank $10,000 with the understanding that if Frank broke the agreement not to compete the buyer could recover the entire $10,000 or, at his option, specifically enforce the agreement. The agreement recognized Frank's right, on his own, to sell, install and service heating systems, but, in so doing, he was not to solicit customers of the buyer.

The buyer thereafter organized the plaintiff Hayes Oil Corporation, employed Frank as manager at $100 a week plus a flat weekly expense allowance, paid $80 a month for the use of the office and yard on the Hayes premises, hired the two truck drivers and part time bookkeeper, and paid for two of the telephones on the premises including the business office telephone.

Although Emily did not sign the agreement with the buyer on February 3, 1960, she was then, or shortly thereafter, aware of it. As the winter of 1961 approached, and probably much earlier, following consultations with a lawyer known to both Frank and his wife, a decision was made and a plan devised by them to resume the business of selling fuel oil at the Hayes premises commencing January 1, 1962. To this end in December, 1961, Grafton Oil was organized, with Emily as the sole stockholder and as president and treasurer. The part time bookkeeper was temporary clerk. Toward the close of December, 1961, and during the days immediately thereafter, the following took place: fliers were sent to all householders in Grafton and to household-

ers elsewhere, including the buyer's customers, announcing, over Emily's name as proprietor, the opening for business of Grafton Oil at the Hayes premises, with telephone number, on January 1, 1962; an advertisement to the same effect was published in the local newspaper; notice was sent by Frank's mother to Hayes Oil to vacate the premises on January 31, 1962; the two truck drivers and the part time bookkeeper who had been working for the buyer were hired by Grafton Oil; on the order of Grafton Oil on December 31, 1961, a 6,000 gallon trailer tank from another wholesaler was parked in the yard to dispense oil to smaller tank trucks operated by the two drivers who commenced on January 1, 1962, the delivery of oil on behalf of Grafton Oil to the buyer's customers; telephone calls to the Hayes residential line were answered "Grafton Oil"; the extension line from the residence to the office on January 2, 1962, was severed to Frank's and Emily's knowledge but not reported to the telephone company or to the buyer. During the early days of January, 1962, Emily actively solicited the buyer's customers and others to buy from Grafton Oil. In soliciting the buyer's customers, she made use of the buyer's customer list. Thirty-seven customers of the buyer cancelled their orders to the buyer. Emily planned to take away from the buyer as many customers as she could, and actually took away approximately two hundred.

During this period, Frank remained in the employ of the buyer and played an apparently passive role in organizing Grafton Oil and in soliciting the buyer's customers. Although asked by the buyer's representative to help win back customers the buyer had lost, Frank made no effort to do so. He did not personally make any deliveries to the buyer's customers, or try to expedite deliveries by drivers newly hired by the buyer. Deliveries to the customers of Grafton Oil were prompt; those to the buyer's customers lagged behind schedule.

The buyer filed this bill of complaint on January 12, 1962.

The judge quite rightly concluded that Frank and his wife, acting in concert, had contrived to deprive the buyer

of the fruits of his purchase for their own advantage. He reasonably inferred that Frank's passive role was an assumed one to give the impression that he was not violating his agreement with the buyer. Similarly, the judge inferred that testimony of a marital rift between Frank and Emily was, in part at least, a screen to conceal the fact that they were acting in collaboration to achieve a common end.

The principal question is what relief, if any, the buyer should be granted against the defendants.

As to Frank, the governing principles are clear. He is bound by his express covenant not to compete if it is limited reasonably in time and place. *Old Corner Book Store* v. *Upham,* 194 Mass. 101, 104–105. *Tobin* v. *Cody,* 343 Mass. 716, 720–721, and cases cited. We find nothing unreasonable in either respect in the terms of the covenant quoted earlier in this opinion. The decree, however, goes somewhat beyond the terms of the covenant in one respect, and falls short of its terms in another respect. The covenant provided that Frank should not "reenter the business of selling fuel oil in any capacity . . . in Worcester County for a period of ten (10) years after the execution of . . . [the] Agreement, or after he ceases to work for the Buyer, whichever event occurs later." The decree in part provides that Frank is "enjoined . . . from . . . engaging in the oil business in" Worcester County. The decree against Frank should be modified by substituting the words "the business of selling fuel oil" for the words "the oil business." The decree also makes the injunction effective for ten years from February 2, 1960. It should be effective for ten years from January 12, 1962, the day when the bill of complaint was filed which for practical purposes may be said to be the date when Frank's employment by the buyer terminated.

The decree as against Emily presents a different question. It is identical with the decree against Frank, which was founded on the express covenant. Emily, however, did not sign the covenant not to compete, and, since she was not the seller of the Hayes business, there is no basis to imply an

agreement by her not to compete. The evidence does not bring the case within the class of cases where a third party induces or causes the covenantor to violate his covenant (*Moran* v. *Dunphy,* 177 Mass. 485; *Beekman* v. *Marsters,* 195 Mass. 205, 209–213; *Comerford* v. *Meier,* 302 Mass. 398, 404–405; *Lumley* v. *Gye,* 2 El. & Bl. 216), or of those cases where a third party merely assists or acts as the covenantor's agent in avoiding his covenant. *Weickgenant* v. *Eccles,* 173 Mich. 695, 700–701. *Howell* v. *Keck,* 127 N. J. Eq. 87. *Lyle* v. *Haskins,* 24 Wash. 2d 883, 901.

The evidence does, however, clearly establish that Emily deliberately and wilfully connived with her husband, and purposefully acted both with him and independently of him, to appropriate to herself and her husband the good will that the buyer had purchased from Frank. The good will thus bought and the good will which enured to the buyer after the purchase were exploited by Emily and her husband to their joint advantage in derogation of the sale and in breach of Frank's duty as an employee of the buyer. Although we are not aware of any reported case where the factual situation is sufficiently similar for us to cite as being precisely in point, we recognize that one of the concepts underlying the principle which restricts the right of a seller of a business to compete with the buyer in such a way as to deprive the buyer of the good will which he has purchased is the fundamental concept of fair dealing. See *Novelty Bias Binding Co.* v. *Shevrin,* 342 Mass. 714, 717; *Ranft* v. *Reimers,* 200 Ill. 386, 394. Emily's conduct, in conjunction with that of her husband, in the circumstances here disclosed, amounts to a total disregard of that concept and reaches a form of unfair competition which calls for injunctive relief. Injunctive relief has been granted in comparable cases. *Fleckenstein Bros. Co.* v. *Fleckenstein,* 21 Dick. (N. J.) 252, 260. *Merager* v. *Turnbull,* 2 Wash. 2d 711, 725. Annotation, 94 A. L. R. 345–351. Williston, Contracts (Rev. ed.) § 1641, pp. 4601–4602. We do not undertake to lay down any broad rule. The facts of the case dictate the result. A decree should be entered which will afford the buyer reasonable

protection from the activities engaged in by Emily. *Foss v. Roby,* 195 Mass. 292, 297–298. Accordingly, the decree should be modified to provide that Emily be enjoined for a period of ten years commencing January 12, 1962, from soliciting, directly or indirectly, for the sale of fuel oil, any person who was a customer of S. J. Hayes & Son and, for the same period, from engaging, directly or indirectly, in the business of selling fuel oil in Worcester, Grafton Center, North Grafton, Millbury, and Shrewsbury.

The decree is to be modified in accordance with the foregoing and, as so modified, it is affirmed with costs.

*So ordered.*