## Board of Education of the City of Shelton v. The Shelton Education Association et al.

House, C. J., Loiselle, Bogdanski, Longo and Speziale, Js.

Argued March 2—decision released May 10, 1977

*Martin A. Gould,* for the appellants (defendants).

*William J. Curran,* for the appellee (plaintiff).

BOGDANSKI, J. The defendants were found in contempt by the court for refusing to comply with an injunction restraining a teachers' strike in the city of Shelton. The plaintiff is the Shelton board of education. The defendants are the Shelton education association (hereinafter the association) and certain certified professional employees of the Shelton board of education (hereinafter the teachers). Pursuant to § 10-153b of the General Statutes, the association was duly selected by the teachers, members of the association, to represent them in negotiations with the plaintiff concerning salaries and all other conditions of employment.

Sometime prior to October 24, 1975, the plaintiff and the association negotiated an employment contract which was thereafter filed with the town clerk pursuant to § 10-153d of the General Statutes. On October 24, 1975, the legislative body of the town rejected the proposed contract. On October 28, the Shelton teachers voted to strike because of the rejection of the contract.

On October 30, the plaintiff sought and obtained an ex parte injunction,[1] effective November 3, 1975, enjoining the defendants from encouraging, instigating or engaging in a strike or a concerted refusal to render services in an effort to effect settlement

[1] General Statutes § 10-153e, as then in effect, provided: "STRIKES PROHIBITED. No certified professional employee shall, in an effort to effect a settlement of any disagreement with his employing board of education, engage in any strike or concerted refusal to render services. This provision may be enforced in the superior court for any county in which said board of education is located by an ex parte temporary injunction issued by said court or a judge thereof; provided, if such injunction is issued, such employee may file a motion to dissolve such injunction and a hearing upon such motion shall be held by the superior court not later than three days after service of such motion upon said board of education pursuant to an order of court or a judge thereof."

of any dispute with the plaintiff. Thereafter, the plaintiff moved for a judgment of civil contempt, and a hearing on the motion was assigned for November 6, 1975.

At the conclusion of the hearing on November 6, the trial court issued the following order: "So as far as these defendants are concerned, I find each one of them in contempt. They are each fined $300.00. They are each sentenced to the custody of the commissioner of correction until purged or further order of the court. And by purged I mean that they apply to the court and agree to return to their classrooms. Take the defendants into custody, Mr. Sheriff."

The order was corrected on November 19, 1975, to read as follows: "Each defendant is found to be in civil contempt and a $300.00 fine is hereby levied against each per day effective November 6, 1975, and each day thereafter, for failure to abide by said injunctive order of the court until each complies with the mandate of the court and each individual defendant is sentenced to the custody of the commissioner of correction until purged or further order of the court and by purged is meant that they apply to the court and agree to return to their classrooms and discontinue the strike."

On the evening of November 6, the members of the association voted to go back to school and returned to their classrooms on the next day. The defendants paid the fines and on November 7 the court declared that they had purged themselves of any contempt and were discharged.

At the imposition of the fines, the court stated as follows: "There was an order of the court here and it was flagrantly violated. I assume that the

defendant [Sharon] Moody spoke for the others when she said that she did not intend — if there was any order of the court, she did not intend to comply with any mandate of the court, and that's an outrageous situation when something like that happens. . . . As far as I'm concerned, they have two days that they have not complied with the order. . . ."

The following then occurred:

"MR. GOULD: Your Honor, with respect to the fine, is that fine conditional?

THE COURT: There is a fine of three hundred dollars that I have entered for each of the defendants.

MR. GOULD: Do I understand, your Honor, that is due regardless of whether they agree to go back or not?

THE COURT: I fined each one three hundred dollars.

MR. GOULD: I would take exception to that, your Honor."

On appeal, the defendants first claim that the court erred in compelling them to testify in violation of the fifth amendment to the United States constitution. They contend that because the contempt proceedings were criminal in nature, they had the right to exercise the privilege against self-incrimination. The record reveals that the defendants invoked the fifth amendment and refused to testify at the hearing on November 6. The trial court, however, directed the witnesses to answer all questions. The defendants duly excepted to the court's ruling.

The question of civil versus criminal contempt was considered by this court in the case of *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 321 A.2d 462. We there stated that a criminal contempt is conduct that is directed against the dignity and authority of the court. In contrast, civil contempt is conduct directed against the rights of the opposing party. A contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public. In both criminal and civil contempt, punishment is levied on the contemnor. In distinguishing between the two, much weight has been placed on the character and purpose of the punishment. Sanctions for civil contempt may be either a fine or imprisonment; the fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained. *United States* v. *United Mine Workers,* 330 U.S. 258, 303–304, 67 S. Ct. 677, 91 L. Ed. 884. In civil contempt the fine must be conditional and coercive, and may not be absolute. *Penfield Co.* v. *S.E.C.,* 330 U.S. 585, 595, 67 S. Ct. 918, 91 L. Ed. 1117.

In criminal contempt the sanction is punitive in order to vindicate the authority of the court. *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S. Ct. 492, 55 L. Ed. 797; *State* v. *Howell,* 80 Conn. 668, 671, 69 A. 1057. Consistent with this principle, punitive fines levied in criminal contempt are usually payable to the state. *In re Merchants Stock & Grain Co.,* 223 U.S. 639, 642, 32 S. Ct. 339, 56 L. Ed. 584.

The line of demarcation between criminal and civil contempt proceedings is in many instances indistinct and even imperceptible. A useful test,

however, is the punishment imposed. When the punishment is purely punitive, imprisonment for a definite term or a fine for a certain sum of money, the contempt is said to be criminal. When the punishment is a remedial or coercive measure, commitment of a contumacious party until he complies with the mandate of the court or a fine until there is obedience to the court's order, the contempt is said to be civil. *McTigue* v. *New London Education Assn.*, supra; *Board of Junior College District* v. *Cook County College Teachers Union*, 126 Ill. App. 2d 418, 262 N.E.2d 125.

An application of the above principles to the facts of the present case compels the conclusion that the contempt proceedings herein, at least with respect to the imposition of the fines, were criminal in nature. The fines levied were punitive, designed to uphold the dignity and authority of the court. They were payable to the state and not to the plaintiff. When requested by counsel, the trial court refused to make the fines conditional. In effect, compliance with the order would not release the defendants from the fine. Although on November 19, 1975, the court purported to correct its order, that correction could not alter the initial effect of a decree such as that issued on November 6.

Although it appears that portions of the contempt proceedings were civil, the proceedings were also criminal in nature because the $300 fines imposed were punitive and unconditional. As such, the defendants were entitled to the safeguards of a criminal trial; *Gompers* v. *Bucks Stove & Range Co.*, supra, 444; including the right to invoke the fifth amendment. Since the right against self-incrimination was denied the defendants, the court's rulings and the judgment rendered thereon consti-

tuted prejudicial error requiring a new trial. *McTigue* v. *New London Education Assn.,* supra, 356.

The portion of the court's order committing the defendants to the custody of the commissioner of correction, however, was civil in nature since the commitment was conditional and coercive, and compliance with the order would release the defendants.[2] " 'When punishment is a remedial or coercive measure: commitment of a contumacious party until he complies with the mandate of the court . . . the contempt is said to be civil.' " *McTigue* v. *New London Education Assn.,* supra, 354; *Board of Junior College District* v. *Cook County College Teachers Union,* supra. In the context of this case, however, the trial court's ruling denying the defendants the right against self-incrimination tainted not only the order having to do with the imposition of the fines but also the order of civil commitment.

The defendants next challenge the court's action in issuing the ex parte injunction, claiming that the trial court lacked jurisdiction under General Statutes § 10-153e to issue an injunction against the association; that the injunction was in violation of the equal protection clause of the fourteenth amendment in that only certain Shelton teachers were named as defendants; that the injunction was overbroad in that it purported to prohibit encouraging or instigating a strike or concerted refusal to render services, and as such was an attempt to prohibit activities protected by the first and the fourteenth amendments and was in violation of § 10-153e; and that the issuance of the ex parte injunction without

[2] The commitments ordered by the court were subject to being purged on further order of the court. "And by purged I mean that they apply to the court and agree to return to their classrooms."

notice or the opportunity for hearing in the absence of a showing of irreparable harm violated the defendants' rights under the fourteenth amendment.

"The taking of an appeal from the granting or denial of a temporary injunction is ordinarily impossible, since such an order is not a final judgment." *Devine Bros., Inc.* v. *International Brotherhood,* 145 Conn. 77, 80, 139 A.2d 60; *Olcott* v. *Pendleton,* 128 Conn. 292, 295, 22 A.2d 633. Under a statutory exception, however, such an appeal may lie if, but only if, the injunction was granted in a case "involving or growing out of a labor dispute." *H. O. Canfield Co.* v. *United Construction Workers,* 134 Conn. 358, 360, 57 A.2d 624. There is no claim by the defendants that the present case falls within the statutory exception. Indeed, such a claim could hardly be made in view of § 10-153e of the General Statutes, wherein the legislature declared it unlawful for teachers to strike and specifically provided for enforcement of that prohibition by injunctive order. A review of the order of temporary injunction in this case, therefore, would constitute an inappropriate variance from our rules regarding appeals from orders which are not final judgments. *Planning and Zoning Commission* v. *Zemel Bros., Inc.,* 159 Conn. 638, 268 A.2d 248.

The defendants' final claim concerns an event which is claimed to have taken place on the afternoon of November 6, 1975, the day on which the court found the defendants in contempt and ordered them committed to the custody of the commissioner of correction. The defendants claim that while they were in custody in the Waterbury Superior Court, they made application to the court and agreed to go back to their classrooms; that, in response, the court ordered that the Shelton education association first

vote to go back to school before these defendants would be released, and subsequently issued the "Corrected Order on Contempt" embodying this requirement.

It is the defendants' claim that the court, in effect, attempted to hold them hostage to compel the individual teachers in Shelton, not parties to the action, to return to their classrooms; that their freedom depended on the completely independent actions of the Shelton teachers over which they had no control.

In its finding the court found that "[n]o application was made by the defendants on November 6, 1975, to purge themselves although the Court was informed by counsel privately that such a proposal was being discussed but was not unanimous." That finding has been challenged as found without evidence. Such a finding, as an affirmative finding of a negative, lacks support in the evidence and, if the negative were an essential element of the defendants' case, could not stand. *Triano* v. *United States Rubber Co.*, 144 Conn. 393, 396, 132 A.2d 570.

In another assignment of error, however, the defendants claim that the court erred in refusing to find that "[i]n the afternoon of November 6, 1975, the day on which the Court found the defendants in contempt, and while the defendants were in custody in the Waterbury Superior Court House, the defendants made application to the Court and agreed to go back to their classrooms."

To secure an addition to a finding on the ground that material facts which are admitted or undisputed have been omitted, the appellant must point to evidence printed in the appendix to his brief, to pleadings or to exhibits properly before the court which disclose that the fact in question was admitted

by the appellee or that its truth was undisputed. See, e.g., *State* v. *Dukes,* 157 Conn. 498, 500, 255 A.2d 614. The defendants have failed to show that the fact in question was so admitted or that its truth was undisputed.

Instead, the defendants refer us to their appendix, where counsel on November 7, 1975, informed the court that the fines were paid and that the teachers had returned to their classrooms, and then stated that sometime on the afternoon of November 6, 1975, "the individual teachers agreed to go back to school, but on application to the court your honor required that the Shelton Education Association vote to go back to school before these defendants could be released." This is the sole reference to this matter in the record, including the transcript.

Such a statement by counsel, unless it can be viewed as an admission or a stipulation, is not regarded as evidence. Cf. *Laske* v. *Hartford,* 172 Conn. 515, 518, A.2d . The statement was but one of several made by counsel which was not further pressed before the court, nor was any exception taken. Moreover, the statement is not free from ambiguity. It says "on application to the court . . . ." It does not indicate in what manner the application was made, whether orally or by written motion. It does not set forth the circumstances under which the application was made, nor to whom it was made, whether to the court, to the judge in chambers, or to the clerk. In any event, the record is devoid of any application, and the defendants can point to nothing more than the statement on November 7.

In effect, the defendants appear to be claiming that, after issuing the contempt order on the morn-

ing of November 6, the judge thereafter on the same day in some undisclosed manner unilaterally altered that order.

To enable us to review that claim, it is incumbent on the appellants to set forth the claim adequately and precisely, with such factual details as would enable this court to pass upon it. Because of the absence of such a presentation, it is impossible for us to review the claim.

There is error, the judgment of contempt is set aside and a new trial is ordered.

In this opinion the other judges concurred.