JOSEPH DEMARTINO ET AL. *v.* MONROE LITTLE
LEAGUE, INC., ET AL.
(11561)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO, Js.

Argued November 30, 1983—decision released February 21, 1984

*David O. Chittick,* for the appellants (named defendant et al.).

*Robert M. Davidson,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J. In May, 1975, the plaintiffs, property owners in Monroe, instituted an action against the town planning and zoning commission (commission), Claude Betterton, Jr., the zoning enforcement officer of the town of Monroe, and Monroe Little League, Inc. (MLL), claiming, inter alia: that MLL had expanded the use of premises utilized for Little League baseball playing activities authorized under a special exception issued by the commission; that the activities of MLL violated Monroe zoning regulations and constituted a nuisance; and that the defendant Betterton had failed to enforce the zoning regulations against MLL although requested by the plaintiffs to do so. The plaintiffs sought, inter alia, relief by way of injunction.

On June 19, 1975, the Superior Court ordered injunctive relief on behalf of the plaintiffs against the defendant MLL in accordance with a written stipulation of the plaintiffs and MLL. That injunction imposed certain restrictions on the days, hours, location and conditions of play. From June 19, 1975, through about March, 1982, MLL conducted Little League baseball activities in Monroe in conformity to that injunction.

In April, 1982, the officers and some of the directors of MLL, on the advice of counsel, organized a corporation known as Little League Baseball of Monroe, Inc. (LLBM), to conduct Little League baseball in Monroe and some Little League games were scheduled and

played on Saturdays. In May, 1982, the plaintiffs in the 1975 action filed a contempt motion which alleged that MLL had violated the 1975 injunction by scheduling and playing baseball games on Saturday and Sunday, as well as playing games at a proscribed location.[1] Thereafter, the new corporation, LLBM, was cited in and added as a party defendant to the contempt motion.[2]

After an evidentiary hearing on the plaintiffs' motion, both defendant corporations, MLL and LLBM, were found in contempt of the 1975 injunction and the court ordered the defendants to pay court costs of the plaintiffs in the amount of $328 in addition to their reasonable attorney's fees.[3] This appeal followed.

On appeal the defendants claim that the trial court erred (1) in finding that the 1975 injunction provided a valid basis for holding either defendant in contempt in 1982 when no judgment file expressing the 1975 trial court's decision had ever been prepared or signed by that trial judge; (2) in applying the 1975 injunction to LLBM, a corporation organized in 1982, when it was not a part of the 1975 injunction proceedings and not bound by the terms of that injunction; (3) in holding MLL in contempt for acts occurring after it had ceased conducting Little League activity and after the plaintiffs had withdrawn their claims against it; (4) in con-

---

[1] Paragraph 2 of the 1975 stipulation provided: "Playing time shall be restricted to Monday through Friday, inclusive, and no play shall be sanctioned or permitted by Defendant [Monroe Little League, Inc.] on Saturday or Sunday." Paragraph 4 of that stipulation provided that "[p]laying field number three (3) so called shall not be used by the Defendant for organized Little League activity."

[2] The trial court issued an ex parte injunction enjoining any further playing of baseball on Saturdays at the proscribed location and that order was obeyed.

[3] The trial court, in awarding reasonable attorney's fees to the plaintiffs, ordered that such fees were "to be determined by the court following a hearing thereon."

sidering the contempt civil rather than criminal; and (5) in imposing a sanction in a civil contempt that was punitive rather then remedial or coercive.

First, we take up the claim of the lack of a judgment file. There can be no question but that the parties, who stipulated in 1975 that the injunction order enter, knew exactly what the judgment provided. Indeed, not only did MLL scrupulously obey that judgment for almost seven years, but it unsuccessfully moved the court in 1981 to modify that injunction claiming circumstances had substantially changed since that time.[4] The action of the court on June 19, 1975, in ordering injunctive relief in accordance with the written stipulation, was a judgment. See 46 Am. Jur. 2d, Judgments § 54. The defendants cannot and do not claim there is not an appealable judgment. When there is an appealable judgment, we have considered the appeal even where there was no judgment file. See *Harris* v. *First National Bank & Trust Co.,* 139 Conn. 749, 752, 97 A.2d 260 (1953); *Northeastern Gas Transmission Co.* v. *Brush,* 138 Conn. 370, 372, 84 A.2d 681 (1951).

The claim that it was error to apply the 1975 injunction to LLBM, a corporation which was not organized until 1982, and which was not a party to the 1975 proceedings and, therefore, not bound by that injunction, likewise lacks merit. The trial court agreed with the plaintiffs that LLBM and those active in its organization and operation realized that any playing of Little League baseball on Saturday under the name of LLBM would violate the injunction order. It also found that the officers of LLBM were "practically identical" with those of MLL and that MLL had not ceased to

---

[4] In their motion for contempt, the plaintiffs also point out that MLL "after losing [its] Motion to Modify [the 1975 injunction]" so conducted itself in the formation of LLBM with the result that "the sole and exclusive reason for the formation of the new corporation was the belief that the Court-ordered injunction could be thus circumvented."

exist at the time of the hearing. The new corporation, i.e., LLBM, was still using the bank account of MLL. The membership of MLL never voted to transfer its funds to LLBM. Significantly, witnesses who were officers of both MLL and LLBM indicated that LLBM was organized so that Little League baseball could be played on Saturdays.[5] Officers of LLBM who testified all indicated that they were aware of a stipulation that prevented the playing of Little League baseball on Saturdays. We agree with the trial court that "[i]t is difficult to see how [the defendants] thought that by simply changing the name to [LLBM], they could avoid the consequences of the [1975] court order."

"When the statutory privilege of doing business in the corporate form is employed as a cloak for the evasion of obligations, as a mask behind which to do injustice, or invoked to subvert equity, the separate personality of the corporation will be disregarded." *Mull v. Colt Co.,* 31 F.R.D. 154, 166 (S.D.N.Y. 1962).[6] This general principle is grounded in equity. *Hill* v. *Jones,* 118 Conn. 12, 17–18, 170 A. 154 (1934); see generally *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* 187 Conn. 544, 447 A.2d 406 (1982). Fraud need not be shown in order to disregard the corporate entity where one corporation is used as an adjunct to another corporation. *In re Otsego Waxed Paper Co.,* 14 F. Sup. 15 (W.D. Mich. 1935). One corporation may be

---

[5] The president of LLBM who was also the president of MLL said that the only difference in the operation is "we're like operating on Saturdays. . . . Play baseball on Saturdays." The treasurer of LLBM who had earlier been the treasurer of MLL said that the only reason that LLBM was formed was "[s]o we could play baseball more on —— on Saturdays [at Beardsley Field]."

[6] In employing the concept of "piercing the corporate veil" it has been said that the mere fact that the entity involved is a nonprofit corporation does not preclude the application of that equitable remedy which looks to the substance and not the form. *Macaluso* v. *Jenkins,* 95 Ill. App. 3d 461, 464–67, 420 N.E.2d 251 (1981); 1 Fletcher, Cyclopedia Corporations (Perm. Ed.) § 41.75, p. 459.

disregarded when the two corporations are identical or indistinguishable in fact. 1 Fletcher, Cyclopedia Corporations (Perm. Ed.) § 43, p. 473. "Where there is a near identity between corporations, their separate existences can be disregarded in order to prevent injustice to a third party." *Royal Exchange Assurance of America, Inc.* v. *SS President Adams,* 510 F. Sup. 581, 583 (W.D. Wash. 1981); see *Houston Oil Field Material Co.* v. *Stuard,* 406 F.2d 1052, 1054 n.1 (5th Cir. 1969); *Crum* v. *Krol,* 99 Ill. App. 3d 651, 660–61, 425 N.E.2d 1081 (1981); 18 C.J.S., Corporations § 7 (e). There can be no question that at the very least MLL and LLBM are in "near identity" with each other and that their corporateness, singly or jointly, served to work injustice on the plaintiffs and was designed to subvert the injunction.[7] Thus, MLL and LLBM were clearly bound in 1982 by the 1975 order. Although LLBM, unlike MLL, was not a party to the 1975 injunction proceedings, LLBM, under the circumstances of this case, is liable on contempt.[8]

Additionally, the claims of LLBM that the 1975 order did not run to the successors or assigns of MLL must be rejected. Persons who are beyond the scope of an injunction are, of course, not bound by it and are "free to ignore it." See *G. & C. Merriam Co.* v. *Webster Dictionary Co.,* 639 F.2d 29, 34 (1st Cir. 1980). At common law an injunction decree bound not only the parties defendant "but also those identified with them in interest, in 'privity' with them, represented by them

---

[7] In this connection, we also note that MLL's 1981 motion to modify the 1975 injunction was denied by the court on March 8, 1982. Shortly thereafter, as stated in the defendants' brief, the officers and some of the directors of MLL organized LLBM in April, 1982.

[8] The United States Court of Appeals for the Second Circuit has recently stated: "Whether one not named in an injunctive decree may nevertheless be bound by it depends on the facts of each case . . . ." (Citations omitted.) *Vuitton et Fils S. A.* v. *Carousel Handbags,* 592 F.2d 126, 130 (2d Cir. 1979).

or subject to their control." *Regal Knitwear Co.* v. *National Labor Relations Board,* 324 U.S. 9, 14, 65 S. Ct. 478, 89 L. Ed. 661 (1945); *Dalton* v. *Meister,* 84 Wis. 2d 303, 312, 267 N.W.2d 326 (1978). "The law is clear that a person may be bound by the terms of an injunction, even though not a party to the action, if he has notice or knowledge of the order and is within the class of persons whose conduct is entitled to be restrained or who acts in concert with such persons." *Clancy* v. *Clancy,* 26 Conn. Sup. 46, 50, 212 A.2d 79 (1965). In a proceeding seeking contempt for violation of an injunction Judge Learned Hand said: "Thus, the only occasion when a person not a party may be punished, is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has power to forbid, an act of a party. This means that the respondent [LLBM in this case] must either abet the defendant [MLL], or must be legally identified with him." *Alemite Mfg. Corporation* v. *Staff,* 42 F.2d 832, 833 (2d Cir. 1930); see *G. & C. Merriam Co.* v. *Webster Dictionary Co.,* supra, 35; *Clancy* v. *Clancy,* supra; *Matter of Rothko,* 84 Misc. 2d 830, 868–69, 379 N.Y.S.2d 923 (1975). From this it follows that the trial court properly found both MLL and LLBM to be in contempt of the 1975 injunction under the circumstances. The argument that LLBM was not in existence in 1975 avails it nothing.

The defendants' argument that the trial court erred in holding MLL in contempt for acts occurring after it ceased to conduct organized Little League activity and after the plaintiffs withdrew their claims against MLL requires little discussion. First, as the facts have shown, MLL was conducting Little League baseball. Second, any reasonable examination of the record persuades us that the plaintiffs simply did not withdraw their claim against MLL.

There remain the anomalous claims that the trial court erred in considering the contempt civil rather than criminal and in its imposition of a punishment in a civil contempt proceeding which was punitive rather than remedial or coercive. The trial court determined, and the plaintiffs correctly argue, that this matter was one of civil, not criminal, contempt and that the sanctions imposed upon the defendants were remedial and not punitive. We agree.

In *Board of Education* v. *Shelton Education Assn.,* 173 Conn. 81, 85, 376 A.2d 1080 (1977), referring to *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 321 A.2d 462 (1973), we said, "a criminal contempt is conduct that is directed against the dignity and authority of the court. In contrast, civil contempt is conduct directed against the rights of the opposing party. A contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent against the public . . . . In distinguishing between [criminal and civil contempt], much weight has been placed on the character and purpose of the punishment." Criminal contempt sanctions "are punitive in their nature and are imposed for the purpose of vindicating the authority of the court." *United States* v. *United Mine Workers of America,* 330 U.S. 258, 302, 67 S. Ct. 677, 91 L. Ed. 884 (1947), citing *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S. 418, 31 S. Ct. 492, 55 L. Ed. 797 (1911); see *Board of Education* v. *Shelton Education Assn.,* supra. In *United States* v. *United Mine Workers of America,* supra, 303–304, the United States Supreme Court said: "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. *Gompers* v. *Bucks Stove & Range Co.,* [supra, 448, 449]. Where

compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." "Civil contempt proceedings are *not* punitive — *i.e.,* they are not imposed for the purpose of vindicating the court's authority — but are 'purely remedial.' *Parker* v. *United States,* 153 F.2d 66, 70 (1st Cir. 1946)." (Emphasis in original.) *G. & C. Merriam Co.* v. *Webster Dictionary Co.,* supra, 41. The United States Court of Appeals for the First Circuit recently noted that " '[i]t is well settled . . . that the court may, in a proceeding for civil contempt, impose the remedial punishment of a fine *payable to an aggrieved litigant as compensation* for the special damages he may have sustained by reason of the contumacious conduct of the offender.' *Parker* v. *United States,* 126 F.2d 370, 380 (1st Cir. 1942)." (Emphasis in original.) *G. & C. Merriam Co.* v. *Webster Dictionary Co.,* supra, 41; see *AMF Inc.* v. *Jewett,* 711 F.2d 1096, 1101 (1st Cir. 1983); Rendleman, "Compensatory Contempt: Plaintiff's Remedy When a Defendant Violates an Injunction," U. Ill. L.F. 971, 979 (1980). The *Merriam* court took care to state, citing *Parker* v. *United States,* 153 F.2d 66, 71 (1st Cir. 1946), that "such a 'compensatory fine' must necessarily be limited to the actual damages suffered by the injured party as a result of the violation of the injunction." *G. & C. Merriam Co.* v. *Webster Dictionary Co.,* supra. The United States Supreme Court aptly has observed that "[t]he absence of wilfulness does not relieve from civil contempt . . . . Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act." *McComb* v. *Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S. Ct. 497, 93 L. Ed. 599 (1949).

The trial court's memorandum of decision indicates that it determined this was a civil contempt, and in fashioning its remedial order it was correctly concerned about compensating the plaintiffs for having been put to the expense of this proceeding because of the contumacious actions of both defendants. The trial court properly awarded the plaintiffs their court costs plus reasonable attorney's fees and, in doing so, confined its "compensation" to them to their actual losses. "[O]nce the plaintiff[s] [have proved] that [they have] suffered harm because of a violation of the terms of [the] injunction, compensatory damages are appropriate." *Vuitton et Fils S. A.* v. *Carousel Handbags,* 592 F.2d 126, 130 (2d Cir. 1979).

There is no error.

In this opinion the other judges concurred.