[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION FOR CONTEMPT
SCI Funeral Services, Inc. ("SCI"), the defendant and counterclaimant in this case has moved for contempt against Robert L. Sagarino ("Sagarino") on the grounds that he has violated this court's Temporary Injunction of May 22, 2000 which provided:
 IT IS HEREBY ORDERED: that Robert L. Sagarino shall refrain and desist, directly or indirectly, alone or for the account of himself or as a partner, member, employee, advisor, or agent of any partnership or joint venture, or as a trustee, officer, director, shareholder, employee, advisor, or agent or any corporation, trust, or other business organization or entity, from owning, managing, advising, encouraging, supporting, financing, operating, joining, controlling, or participating in the ownership, management, operation, or control of or be connected in any manner with the C.R. Sagarino Funeral Home, L.L.C., or in any other manner violating the Agreement-Not-To-Compete dated June 14, 1994 by and CT Page 11286 between Robert L. Sagarino and Donald D. Sagarino Funeral Home, Inc. until further order of this court.
The above order was issued to enforce an Agreement-Not-To-Compete dated June 14, 1994 between Robert L. Sagarino and Donald D. Sagarino Funeral Home, Inc.(the "Agreement") which was executed in connection with the purchase of the Donald D. Sagarino Funeral Home by SCI.
After Sagarino was terminated from his employment by SCI he attempted to begin competition with SCI in violation of the Agreement by setting up an entity known as C.R. Sagarino Funeral Home, LLC, which in early 2000, began operating the C.R. Sagarino Funeral Home ("C.R."), located on 25 South Street, New Britain, Connecticut, approximately two miles from the Donald D. Sagarino Funeral Home. C.R. Sagarino Funeral Home, LLC, was a limited liability corporation whose shareholders were Clariza Sagarino, Robert Sagarino's wife, and two limited liability corporations controlled by Vincent Pagano, Sagarino's good friend. Clariza Sagarino is a paralegal and has no experience in operating a funeral home, and there is no evidence that Vincent Pagano was involved in the operations of the funeral home. Instead, Robert Sagarino was listed as the Director and Licensed Embalmer of C.R. and it was Robert Sagarino who actually contacted potential customers and took all other actions required for the operation of the funeral home.
There is a good deal of case law to the effect that one who is bound by a covenant not to compete cannot evade the terms of the covenant by having relatives ostensibly operate the competing business. Dad'sProperties, Inc. v. Lucas, 545 So.2d 926 (14 Fla.L.Weekly 1180) (1984) (wife and her controlled corporation would be enjoined from conducting competing business; "Mr. Lucas cannot be allowed to do indirectly, through his wife and her controlled corporation, that which he covenanted not to do himself."); Harris v. Theus, 149 Ala. 133, 44 So. 131, (1907) (where wife owned competing business, but purchase, erection and operation of competing business was instigated by husband, covenant would be enforced against husband and wife); Weickgenant v. Eccles, 173 N.W. 695,140 Mich. 513 (1913) (where husband's money was used to launch wife's competing business, husband was managing and controlling business and wife was using family name for business, covenant not to compete was held to have been violated); Loutzenhiser v. Peck, 89 Wash. 435, 154 P. 814
(1916) (where husband set his wife up in competing business, even though wife or tenant subsequently operated business, husband held to have breached covenant not to compete; "`[o]perations under the guise ofassistance to relatives may not be utilized to violate contracts of thecharacter of the one before us.'" (citations omitted); Sulmonetti v.Hayes, 347 Mass. 390, 198 N.E.2d 297, 301 (1964) (where wife operated competing business but had purposefully acted with husband to appropriate CT Page 11287 to herself and her husband good will that buyer had purchased from husband, husband and wife found to have violated covenant not to compete; "we recognize that one of the concepts underlying the principle which restricts the right of a seller of a business to compete with the buyer in such a way as to deprive the buyer of the good will which he has purchased is the fundamental concept of fair dealing. . . . Emily's conduct, in conjunction with that of her husband, in the circumstances here disclosed amounts to a total disregard of that concept and reaches a form of unfair competition which calls for injunctive relief.");Ingredient Tech. Corp. v. Nay, 532 F. Sup. 627, 632 (E.D.N.Y. 1982) (where wife and son set up competing business, husband impliedly (although not explicitly) encouraged former customers to patronize competing business, wife used former's business's telephone number, husband and wife filed joint tax returns so that profits to wife benefited husband; husband, wife and son held to have violated husband's covenant not to compete)[1].
The clear intent of the Temporary Injunction was to enforce the non-competition Agreement for which Sagarino had been well compensated by SCI. However, after this court issued the Temporary Injunction, Sagarino continued to attempt to violate the Agreement. He continued to have a clear indirect connection with C.R. His wife and good friend were still the ostensible owners of C.R. Sagarino attempted to evade the order of this court by having his name removed as the licensed embalmer and director of C.R. However, he continued to operate the funeral home just as he had before May 22, 2000 in clear violation of the Temporary Injunction.
At the hearing on the Motion for Contempt SCI proved the following. Sagarino had contact with Maria Savarino after May 22, 2000 concerning the transfer of the prepaid funeral contract of her mother-in law, Concetta Savarino, from the Donald D. Sagarino Funeral Home to C.R. In June of 2000 Sagarino met with Robert Kiniry, a funeral director, concerning the continued operation of C.R. In June, 2000 Sagarino also had contact with Paul Calafiore concerning the transfer of the prepaid funeral contract of his mother, Concetta Calafiore, from the Donald D. Sagarino Funeral Home to C.R. In June, 2000 Sagarino also violated the Temporary Injunction by having contact with Andrea Simeone of the New Britain Herald concerning advertising fees owed by C.R. to the newspaper. Ms. Simeone testified that she had a beeper number to use in order to contact C.R. concerning its advertising account. She called the number and received a return call from Sagarino in which he discussed the status of the account and represented that a certain amount would be paid. On June 13, 2000 Sagarino called the Albino Landscaping Company to arrange for an estimate concerning landscaping work to be done at C.R. CT Page 11288
"[A] civil contempt is conduct directed against the rights of the opposing party." Board of Ed. of City of Shelton v. Shelton Ed. Ass'n,173 Conn. 81, 85, 376 A.2d 1080, 1082 (1977). "A contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." Id. "`Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. . . .'" DeMartino v.Monroe Little League, Inc., 192 Conn. 271, 278, 471 A.2d 638, 642 (1984) (citations omitted).
Sanctions for civil contempt may include fines. Board of Ed. of City ofShelton v. Shelton Ed. Ass'n, 173 Conn. at 85, 376 A.2d at 1082. There are two types of fines that may be imposed for civil contempt — a coercive fine and/or a remedial fine. A coercive fine is imposed to coerce compliance with the court's order, such as a fine that is conditional and continues until the contumacious party complies with the mandate of the court. Id. A remedial fine is a fine that "compensates a complainant for losses sustained as a result of the defendant's conduct."DeMartino v. Monroe Little League, Inc., 192 Conn. at 278,471 A.2d at 642. "`"It is well settled . . . that the court may in a proceeding for civil contempt, impose the remedial punishment of a fine payable to anaggrieved litigant as compensation for the special damages he may have sustained by reason of the contumacious conduct of the offender."'" Id.
(citations omitted). A remedial fine may include the complainant's court costs plus reasonable attorney's fees incurred in the contempt proceeding. Id.
In this case, SCI is seeking a remedial fine, which would include all losses it sustained as a result of Sagarino's violations of the Temporary Injunction. At the hearing on the Motion for Contempt SCI proved that the amount lost by SCI with respect to the Sagarino pre-paid funeral contract was $6,157.81 and with respect to the Calafiore pre-paid contract was $1,529.71.
Based on the foregoing the court finds that Robert Sagarino is in contempt of the Temporary Injunction dated May 22, 2000. At the hearing the court also ordered that C.R. Sagarino Funeral Home cease operations. The basis of that ruling was the court's finding that C.R. Sagarino Funeral Home, LLC was a corporation set up solely for the purpose of allowing Robert Sagarino to evade the non-competition Agreement, and even after the Temporary Injunction issued, Sagarino continued to be the only person operating the C.R. Sagarino Funeral Home in violation of the Temporary Injunction. The court imposes on Robert CT Page 11289 Sagarino a civil fine in the amount of $7,687.52, which represents the amounts lost by SCI as a result of Sagarino's contumacious conduct. Sagarino shall pay that amount to SCI within thirty days of the date hereof.
It is apparent to the court that Mr. Sagarino has not taken the Temporary Injunction seriously and that SCI may well face future violations of the Temporary Injunction by Mr. Sagarino. Therefore, the court further orders, that in addition to other fines which may be imposed for future violation of the Temporary Injunction, Robert Sagarino will incur a fine of $500 per day for every day after the date of this order that he is found to be in violation of the Temporary Injunction.
By the court,
Aurigemma, J.