MEMORANDUM OF DECISION RE: MOTION FOR CONTEMPT AND SANCTIONS
This is a motion for contempt and sanctions filed by maternal grandmother and maternal stepgrandfather (hereinafter respondents) in this neglect case, seeking to have the court find the Department of Children and Families (hereinafter DCF) in contempt for failing to follow this court's order regarding an investigation of the respondents' home as a possible relative placement for Denzel D.
By way of background, DCF sought and was granted an order of temporary custody of the child, Denzel D., on December 20, 1999, (Swienton, J.) pursuant to a pending neglect petition. At the preliminary ten day order of temporary custody hearing, the court ordered DCF to investigate maternal grandmother for possible relative placement. Subsequently the petitioners through their privately retained counsel filed a motion to intervene pursuant to Conn. Gen. Stat. § 46b-129 (c) which motion was granted on February 24, 2000. (Swienton, J.)
At the hearing on the motion to intervene, the respondents reiterated their desire to have Denzel placed with them. DCF indicated that the petitioner's home was unacceptable due to domestic disputes between the maternal grandmother and maternal stepgrandfather one of which resulted in an arrest in the fall of 1999 and allegations that maternal step CT Page 9587 grandfather had at some time made an inappropriate sexual advance toward Denzel's mother. There were disputes as to the resolution of the arrest in the fall of 1999 and denials made regarding the sexual advance allegation. After hearing the arguments, the court issued an order stating ". . . that the Department re-open whatever steps need to be re-opened to look at Mr. and Mrs. M. as a relative placement." (Tr. Page 8).
On March 31, 2000, the respondents through their counsel filed a motion for contempt and sanctions stating that DCF ignored this court's order to re-open the investigation of the respondents as a possible relative placement for the child.
On April 12, 2000, the trial on the neglect petition was scheduled and an agreement was reached. The mother entered a nolo contendere plea to the neglect allegations and the child was adjudicated neglected in that he was denied proper care and attention and was permitted to live under conditions injurious to his well-being. The disposition was a one year commitment to DCF, and the court was informed that the child would be placed with his mother at the residential treatment facility where she was residing and receiving treatment for her substance abuse issues. The hearing on the motion for contempt and sanctions was continued until April 19, 2000.
At the hearing held in this court on April 19, 2000, DCF argued that since the child was placed with his mother, the issue of placement with a relative caretaker was moot. Any civil contempt action is principally remedial in nature, and the remedy sought by the respondents — placement of the child Denzel D. with them — could not be effectuated. In fact, the respondents agreed with the placement of the child with his mother. The court proceeded with an evidentiary hearing.
The respondents called Kenny Adom, the social worker assigned to this case, as a witness. Denzel D. was taken into custody some time in December, 1999. The policy of DCF is to look to relatives for placement and steps were taken at the initial placement to investigate the maternal grandmother and maternal stepgrandfather. However, after collecting and receiving information DCF decided not to place the child with the respondents. The presenting issues were domestic violence between the maternal grandmother and maternal stepgrandfather and an allegation of the maternal stepgrandfather made sexual advances toward the mother of Denzel. On January 6, 2000, Adom had performed a home assessment and interview with the respondents. They were questioned regarding the domestic violence incident and Adom learned that they were involved with counseling through Catholic Family Services. However, the position of DCF did not change and Denzel remained in non-relative foster care. CT Page 9588
After the hearing on February 24, 2000, Adom discussed the court's order and the scope of the investigation into the maternal grandmother and maternal step grandfather as a relative placement with his supervisor. The plan was to contact Catholic Family Services and obtain an assessment as to how appropriate the respondents would be as caretakers and to go to the home and perform a re-assessment. The court found the social worker's testimony credible that he attempted to contact the therapist at Catholic Family Services and follow through on the investigation.
The allegation of improper sexual advances came from an old DCF report. Adom interviewed the mother regarding the allegation, however he did not discuss it with the respondents because his supervisor did not want it discussed over the telephone.
The plan for this case was for Denzel to be reunified with his mother. At the time of the hearing on the motion for contempt, he had been placed with his mother. The respondents argued that the relief that was being sought was sanctions of a general nature and asked the court to grant the motion of civil and criminal contempt for the disobedience of the court's orders.
 I CRIMINAL AND CIVIL CONTEMPT
Contempt actions may be characterized as either civil or criminal. "A criminal contempt is conduct that is directed against the dignity and authority of the court." Board of Education v. Shelton Education Assn.,173 Conn. 81, 85, 376 A.2d 1080 (1977). "In criminal contempt the sanction is punitive in order to vindicate the authority of the court . . ." Id. Conduct that is directed against the dignity and authority of the court shall be criminal contempt, and may be adjudicated summarily or nonsummarily. Prac. Book § 1-14.
Misbehavior or misconduct in the court's presence causing an obstruction to the orderly administration of justice shall be summary criminal contempt. Prac. Book § 1-16. In the case of a nonsummary contempt proceeding, it shall be prosecuted by means of an information. The case shall proceed as any other criminal prosecution. Prac. Book § 1-18. "A proceeding for the punishment of criminal contempt should conform as nearly as possible to the proceedings in criminal cases, including the presumption of innocence, proof beyond a reasonable doubt and the privilege against self-incrimination." Moore v. State,186 Conn. 256, 258-259, 440 A.2d 969, (1982). CT Page 9589
"[C]ivil contempt is conduct directed against the rights of the opposing party . . . Sanctions for civil contempt may be either a fine or imprisonment; a fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained." Board of Education v. Shelton Education Assn., supra,173 Conn. 85.
The violation of any court order qualifies for criminal contempt sanctions. In order to distinguish between criminal and civil contempt, the character and purpose of the punishment is important. Criminal contempt sanctions are punitive and are imposed for the purpose of vindicating the authority of the court, whereas civil contempt sanctions are employed to coerce the defendant into compliance with the court's order and to compensate the complainant for losses sustained, or both.DeMartino v. Monroe Little League, Inc., 192 Conn. 271, 278, 471 A.2d 638, (1984). Since the remedy apparently sought is remedial, i.e., coercive and compensatory as opposed to punitive, any alleged wrongdoing by DCF does not qualify for either summary criminal contempt or nonsummary criminal contempt. Therefore, there is no basis to proceed under a criminal contempt action but to proceed under a civil contempt action.
 II STANDARD OF PROOF
The court must determine whether the respondents have sustained the correct burden to prove civil contempt. "Although trial courts have not yet been directed to utilize a specific measure by which to determine whether `sufficient' evidence has been presented in connection with civil contempt proceedings, Cologne v. Westfarms Associates acknowledged and tacitly approved the applicable burden of proof in the federal court: `We note that in the federal system the burden of proof in civil contempt cases is the clear and convincing evidence standard. See Oriel v.Russell, 278 U.S. 358, 362, 49 S.Ct. 173, 73 L.Ed. 419 (1928); In reIrving, 600 F.2d 1027, 1037 (2d Cir.), cert. denied, 444 U.S. 866,100 S.Ct. 137, 62 L.Ed.2d 89 (1979); Goldfarb, Contempt Power (1963) p. 251;see generally note, `Procedures for Trying Contempt in the Federal Court,' 73 Harv.L.Rev. 353 (1959)." Cologne v. Westfarms Associates,197 Conn. 141, 152 fn. 11, (1985)." Bowers v. Bowers, 1999 WL1293356, No. FA 870340254S, Dec. 21, 1999 (Conn.Super.) (Rubinow, J.).
Since this court is directed to the utilize the clear and convincing standard as the burden of proving a contumacious act, the court finds that the respondents have not met their burden of proving by clear and convincing evidence that DCF violated the court's order. Further, under CT Page 9590 the circumstances, it was the intention of DCF to effectuate its plan of reunification with Denzel's mother, which it did on April 12, 2000. It was not DCF's intention to ignore the court's order to re-investigate the maternal grandmother and maternal stepgrandfather but rather follow its statutory mandate to reunify a parent and child where possible and in the interest of the child.
This court is aware of the damage that can be done to any child by inaction or delay in keeping a child from a placement that may be in his/her best interests. However, in this case, the court finds that DCF was acting diligently, ever mindful of the plan it was intending to effectuate.
The motion for contempt and sanctions is denied.
SWIENTON, J.