## MARK A. SHAPIRO *v.* SUSAN K. SHAPIRO
### (AC 22599)

Dranginis, Bishop and McLachlan, Js.

Argued September 23—officially released December 16, 2003

*Mark A. Shapiro*, pro se, the appellant (plaintiff).

*Fatima T. Lobo*, for the appellee (defendant).

*Opinion*

BISHOP, J. This appeal arises in connection with a dissolution of marriage between the plaintiff, Mark A. Shapiro and the defendant, Susan K. Shapiro. The plaintiff appeals from the judgment of the trial court finding him in contempt of court, granting sole custody of the parties' children to the defendant and ordering him to pay attorney's fees to the defendant. We reverse the judgment of the trial court.

The following procedural history and factual background are germane to our discussion of the issues on appeal. On October 27, 2000, the court rendered judgment dissolving the parties' marriage. The judgment of dissolution incorporated an agreement by the parties, which included provisions for alimony, shared custody, child support and the distribution of property.[1] In June, 2001, the plaintiff was sentenced to a term of thirty months incarceration on federal charges and on July 20, 2001, began serving his sentence at the Federal

---

[1] Under the terms of the agreement the plaintiff was obligated to pay child support to the defendant in the amount of $1000 each week. The agreement required that in the event the plaintiff became incapacitated and was no longer able to make the payments, he was obligated to ensure that a certain trust make the payments on his behalf.

Prison Camp in Allenwood, Pennsylvania, where he remained until his release to a community facility on July 8, 2003.[2]

A review of the court file discloses that the parties' marital dissolution did not bring their disagreements to a conclusion. Within days of the dissolution, the defendant filed a motion for sole custody of the children. Thereafter, each party filed numerous motions seeking either enforcement or modification of the terms of the marital dissolution judgment.

Attorney Robert F. Cohen represented the plaintiff in the marital dissolution proceedings and on a post-judgment basis until the court, on November 5, 2001, granted his August 8, 2001 motion to withdraw. Initially, when Cohen sought to withdraw as counsel for the plaintiff, the court postponed taking action on the ground that the plaintiff was in federal prison and, thus, unable to be present and to be heard with respect to any objection he may have had to his counsel's efforts to withdraw from representing him. On November 5, 2001, however, despite the plaintiff's continuous federal incarceration and attendant inability to be present and to be heard, the court granted Cohen's motion to withdraw.

Subsequently, on November 28, 2001, the court conducted a hearing regarding the defendant's motions for contempt and to modify child custody. Although it is clear that the plaintiff remained an inmate in federal prison, the court file does not reflect whether he received actual notice of the hearing date or whether any provision was made for his attendance. At the hearing, the defendant's counsel and the guardian ad litem for the minor children presented testimony and evidence relating to the defendant's claims and the issue of custody. Because neither the plaintiff nor counsel

---

[2] The plaintiff was not at liberty, however, until September 22, 2003.

for the plaintiff participated, however, none of the witnesses was subject to cross-examination on behalf of the plaintiff and, correspondingly, the plaintiff was not able to present a defense to the allegation of contempt or to present his claims in regard to the pending motions. Following the evidentiary hearing, the court found the plaintiff in contempt of court regarding support and property orders, and granted to the defendant sole custody of the parties' children. Additionally, the court ordered the plaintiff to pay counsel fees on behalf of the defendant. This appeal followed.

The plaintiff argues that the court's orders of November 28, 2001, should be vacated. Specifically, he claims that by proceeding on November 28, 2001, the court violated his due process rights to be represented by counsel, to be given adequate notice of the hearing, to be given an opportunity to be present and to be heard, to present evidence and to cross-examine witnesses against him.[3] We agree and, accordingly, reverse the judgment of the trial court.

The principles that guide our consideration of the issues on appeal are part of the bedrock of our jurisprudence. "It is the settled rule of this jurisdiction, if indeed it may not be safely called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard." (Internal quotation marks omitted.) *Hasbrouck* v. *Hasbrouck*, 195 Conn. 558, 559–60, 489 A.2d 1022 (1985). "It is a fundamental premise of due process that a court cannot adju-

---

[3] Although the pro se plaintiff enunciates seven issues in his brief, because they all assert due process violations, we paraphrase and combine them in the interests of clarity and judicial efficiency.

dicate a matter until the persons directly concerned have been notified of its pendency and have been given a reasonable opportunity to be heard in sufficient time to prepare their positions on the issues involved." (Internal quotation marks omitted.) *Roberts* v. *Roberts*, 32 Conn. App. 465, 475, 629 A.2d 1160 (1993).

"Due process of law requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. . . . Because the inability of [a party] to obey an order of the court, without fault on his part, is a good defense to a charge of contempt . . . the [party has] the right to demonstrate that his failure to comply with the order of the trial court was excusable." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 777, 804 A.2d 889 (2002). Likewise, a custody order may not be modified without notice and an opportunity to be heard.[4] *Hurtado* v. *Hurtado*, 14 Conn. App. 296, 306, 541 A.2d 873 (1988). It is with those precepts in mind that we turn to the plaintiff's claim.

We first review the events that transpired after Cohen had filed his motion to withdraw, as they are relevant to the due process issues involving the November 28, 2001 hearing. Although the court file reflects that on August 8, 2001, Cohen filed a motion to withdraw as attorney, the file contains no indication that the plaintiff received notice of that motion.[5] One week later, on

---

[4] Our Supreme Court has held that "[b]efore a parent is permanently deprived of legal custody, or any change is made therein, the usual and ordinary procedures of a proper and orderly hearing must be observed." *Strohmeyer* v. *Strohmeyer*, 183 Conn. 353, 356, 439 A.2d 367 (1981).

[5] The only suggestion that the plaintiff may have been notified of Cohen's desire to withdraw as his counsel came from Cohen's representation to the court that he had spoken with the plaintiff on the telephone at the plaintiff's place of incarceration, but that he was limited as to what he could say to

August 15, 2001, when the court held a hearing on Cohen's motion to withdraw, the court declined to rule on the motion for the express reason that the plaintiff was not present in court and did not have an opportunity to respond to his counsel's motion.[6] At that juncture, the court ordered the defendant's counsel to initiate a habeas petition to bring the plaintiff to court for a hearing on Cohen's motion. Notwithstanding its spoken desire to accord the plaintiff an opportunity to be heard with respect to Cohen's motion, the court on November 5, 2001, granted Cohen's motion to withdraw without further hearing and without providing the plaintiff an opportunity to be heard. Additionally, the court set November 16, 2001, as a hearing date on the defendant's pending motions for contempt and for a modification of child custody. The court ordered Cohen to inform the plaintiff of the November 16 hearing and the court's intention to proceed on that date.

On November 16, 2001, when the court convened the hearing, the plaintiff was not in attendance. Although the file is devoid of any indication that the plaintiff was informed of that hearing date, the transcript reveals that an attorney who was present in the courtroom indicated that he had spoken with the plaintiff about the anticipated hearing. That attorney, however, did not appear for the plaintiff and had no apparent authority to act on the plaintiff's behalf. After colloquy between that attorney and the court, the court postponed the hearing until November 28, 2001, and asked the nonap-

the plaintiff because the telephone calls were monitored. He also contended that he sent notice to the plaintiff, but the court file does not contain a return receipt card indicating that the plaintiff had received notice of his counsel's motion to withdraw.

[6] The court stated: "Mr. Cohen, your motion to withdraw appearance dated August 8, 2001, is entirely appropriate and is entirely consistent with your ethical obligations, both to your client and to the court, but [the plaintiff] has not had an opportunity to be heard on that, so I'm not going to grant it at this time."

pearing attorney to inform the plaintiff of the court's intention to proceed on the pending motions on November 28.[7]

An attempt to notify the plaintiff through the offices of an attorney who had not been authorized to appear for him and who, in fact, had not filed an appearance for the plaintiff is of no effect. In the absence of an indication that the plaintiff received actual notice of the impending November 28, 2001 hearing and an opportunity to be heard, the court was without authority to issue the orders that are the subject of this appeal.

We have stated that "[w]here a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained." (Internal quotation marks omitted.) *Castro* v. *Castro*, 31 Conn. App. 761, 770, 627 A.2d 452 (1993). This is such a case. A review of the record indicates that the plaintiff was not afforded the opportunity to participate in any manner in the November 28, 2001 hearing. Accordingly, conducting the hearing without affording the plaintiff an opportunity to be present, to examine and to present witnesses, and to present a defense to the alleged contempt was a denial of due process.

The court as early as August 15, 2001, was aware that the plaintiff was incarcerated and serving a sentence, which, by its terms, would prevent him from being able to attend court unless he was brought to court by official process. Indeed, the court on two occasions engaged in a lengthy colloquy with the defendant's counsel seek-

___

[7] It appears from an incomplete transcript of the proceedings on November 16, 2001, that an attorney named Morrocco attended the hearing to determine if he would enter an appearance on behalf of the plaintiff. Morrocco never filed an appearance, and his involvement in this case was limited to that day when the court requested that Morrocco inform the plaintiff of the November 28, 2001 hearing.

ing a procedure to bring the plaintiff before the court. Despite the court's urging, there is no indication in the court file that any effort was made to produce the plaintiff in court.[8] As a consequence of not receiving notice of the hearing and not being able to attend, the plaintiff was not able to present a defense or to cross-examine the witnesses whose testimony was adverse to him. At oral argument, the defendant's counsel conceded that if the plaintiff or counsel on his behalf had been present at the hearing, they properly could have objected to much of the evidence adduced by the defendant as inadmissible hearsay.

"When the conduct underlying the alleged contempt does not occur in the presence of the court, a contempt finding must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Internal quotation marks omitted.) *Bryant* v. *Bryant*, 228 Conn. 630, 637, 637 A.2d 1111 (1994).

Because the November 28, 2001 hearing was conducted in violation of the plaintiff's due process rights to be present, to examine and to cross-examine witnesses and to present a defense, orders issued at that hearing cannot stand.

The judgment is reversed, all orders issued by the trial court on November 28, 2001, are vacated, and the case is remanded for a new hearing on the defendant's motions for contempt and to modify custody.

In this opinion the other judges concurred.

---

[8] By that observation, we are not concluding that such a process was, in fact, available to the court. The crux of our decision is that it was improper for the court to conduct the November 28, 2001 hearing under those circumstances, not that the court failed to take reasonable steps to ensure the plaintiff's attendance.