JOHN EDMOND III *v.* DAWN FOISEY ET AL.
(AC 29077)

DiPentima, McLachlan and Lavine, Js.

Argued September 24—officially released December 23, 2008

*Andrew Brand,* with whom was *Bryan P. Fiengo,* for the appellant (named defendant).

*Beth A. Steele,* for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant Dawn Foisey[1] appeals from the judgment of contempt rendered in favor of the plaintiff, John Edmond III. Specifically, the defendant claims that the trial court (1) violated her right to due process when it failed to afford her a full hearing on the issues raised in the plaintiff's motions for contempt, (2) imposed a punitive sanction in violation of Practice Book § 1-21A,[2] (3) improperly found her in contempt and (4) improperly enforced the parties' stipulated judgment by a sanction for contempt.[3] We agree with the

---

[1] The plaintiff also named Wells Fargo Bank, N.A., and William W. Backus Hospital in Norwich as defendants. In the judgment file, the court stated that the rights of these defendants were not affected by the court's ruling. As neither of these entities is a party to this appeal, we refer solely to Foisey as the defendant.

[2] Practice Book § 1-21A provides in relevant part: "The violation of any court order qualifies for criminal contempt sanctions. Where, however, the dispute is between private litigants and the purpose for judicial intervention is remedial, then the contempt is civil, and any sanction imposed by the judicial authority shall be coercive and nonpunitive, including fines, to ensure compliance and compensate the complainant for losses. . . ."

[3] The defendant also claims that the stipulated judgment of the parties was voidable as a result of the plaintiff's misrepresentation regarding payment of the taxes on the property. She further argues that the contempt arising therefrom is negated by this misrepresentation. This claim was not raised by the defendant before the trial court. Accordingly, we decline to consider

defendant's first and second claims and, accordingly, reverse the judgment of the trial court.[4]

A discussion of the unfortunate and extensive factual and procedural history is necessary. The plaintiff is an owner of property located in Griswold known as 15 Juniper Lane. In April, 2004, the plaintiff transferred an interest in this property to the defendant. Specifically, he and the defendant held the property as joint tenants with rights of survivorship, each holding an undivided half interest therein. At some point subsequent to this transfer, the relationship between the parties broke down.

On March 17, 2006, the plaintiff commenced the present action, seeking a judicial determination of the respective rights and interests of the parties with respect to the property. In his amended complaint, dated November 8, 2006, the plaintiff sought a partition of the property and set forth claims of conversion, property damage and unjust enrichment. On December 18, 2006, the court granted the defendant's motion to bifurcate the partition action from the remaining claims.

On December 20, 2006, prior to trial, the parties executed an agreement with respect to the partition action. First, the plaintiff agreed to sell his title and interest in the property to the defendant for $200,000. With those proceeds, the plaintiff would pay off the approximately $140,000 mortgage. The sale was to take place within ninety days, which would be March 20, 2007. Second, the December, 2006 mortgage payment, which had not been made, was to be made by the defendant after receiving funds for one half of the payment from the

---

it on appeal. *Solano* v. *Calegari*, 108 Conn. App. 731, 742, 949 A.2d 1257, cert. denied, 289 Conn. 943, 959 A.2d 1010 (2008); *Korsgren* v. *Jones*, 108 Conn. App. 521, 523 n.1, 948 A.2d 358 (2008); see also Practice Book § 60-5.

[4] We therefore do not address the other issues raised by the defendant on appeal.

plaintiff. Third, the defendant was required to "pay in full all mortgage payments due for the property up until the day of closing and hold the plaintiff harmless for the same." Fourth, the defendant retained exclusive possession of the property until the closing. Fifth, the plaintiff was awarded access to the premises on January 6, 2007, to retrieve certain personal items. The court, *Hon. Robert C. Leuba,* judge trial referee, incorporated the agreement into its judgment.

On January 8, 2007, the plaintiff filed a motion for contempt, alleging that the defendant had failed to comply with the terms of the agreement. Specifically, he claimed that the defendant had neglected to make the December, 2006 mortgage payment and refused to allow him access to retrieve his belongings. On January 19, 2007, the defendant filed an objection, averring that she had tendered the required payment and that the plaintiff had retrieved his items from the property.

On February 13, 2007, the court, *Hon. D. Michael Hurley,* judge trial referee, held a hearing on the plaintiff's contempt motion. At the hearing, counsel for the plaintiff acknowledged that both the December, 2006 and January, 2007 mortgage payments had been made by the defendant. The plaintiff's counsel argued, however, that the payments were untimely and therefore negatively affected the plaintiff's credit. In response, counsel stated that the defendant "didn't know the date that she had to pay." The court expressly rejected the defendant's assertion that she was unaware of the date that the mortgage payments were due and found the defendant in contempt.[5] The parties then agreed to stay the proceedings for contempt with respect to the issue of the plaintiff's belongings at the property. The court continued the plaintiff's request for attorney's fees[6] and

---

[5] The defendant did not appeal from this finding of contempt.

[6] Specifically, the court stated: "So in other words, if there's any further problem, I may well order that counsel fees be paid. But if she pays [the] February and probably [the] March payments and everything goes through

ordered the defendant to pay the February, 2007 mortgage payment, including any late fees, by February 20, 2007. Counsel for the plaintiff stated for the record that the monthly mortgage payments were due on the first day of the month with a grace period in which payment must be received by the fifteenth of the month.

On March 21, 2007, the plaintiff filed a second motion for contempt, alleging that the defendant had failed to pay the February and March, 2007 mortgage payments in a timely manner, failed to permit him access to retrieve his items from the property and failed to take the steps necessary to finalize the sale of the property.

On April 30, 2007, the court held a hearing on the plaintiff's second contempt motion. The plaintiff testified that timely mortgage payments had not been made in December, 2006 and January, February and March, 2007. Additionally, there was evidence that the April mortgage payment had not been made at all. The plaintiff then stated that if the defendant could not obtain financing to purchase the property, he preferred that it be sold on the real estate market. The plaintiff's counsel then called Keith Wilcox, a mortgage lender, as a witness. Wilcox testified that the defendant first applied for a mortgage loan on March 12, 2007. This was only eight days before the closing was to occur on March 20, 2007. Wilcox testified that the defendant's application had been denied. He also indicated that there was a 50 percent chance that the defendant would be able to obtain a mortgage loan.

The defendant then testified that she did not make the April, 2007 mortgage payment because that was not part of the agreement. She also stated that she had believed that the payments were due by the twentieth of each month and that she was aware of her obligation

---

as far as the sale of the house, then I'll not order counsel fees. If she fails to do that, I may well order the $750 counsel fees."

to make the monthly payments until a closing had occurred.

At the conclusion of the testimony, the plaintiff's counsel requested various court orders. During further discussion, counsel for the parties acknowledged that an appraisal had been completed in December, 2006, and that the value of the property was $230,000. The court ordered that if an offer to purchase the property was $225,000 or greater, the parties were required to accept it. The court then stated that the defendant did not explain why the February, 2007 mortgage payment had not been made on February 20, as the defendant previously had agreed.[7] The court found the defendant in contempt[8] and stated: "I am also going to order, just so it's clear, that she make the April, [2007] payment immediately and that she is responsible for any subsequent payments until the house is paid for. And they must be made in a timely manner, that is, on the first of the month, otherwise [the plaintiff's] credit is affected and that's not fair. As to the agreement, I'm going to—or rather, the order of the court, I'm going to go along with what counsel suggested, that the sale be arranged for by [a Realtor], that the defendant is ordered to sign the listing agreement within three days of when it's presented. . . . She must allow access to the property [and] that the minimum payment or minimum sale price will be $225,000." The court also awarded the plaintiff attorney's fees in the amount for $500.

On May 7, 2007, the plaintiff filed his third motion for contempt. He alleged that the defendant had failed

---

[7] The defendant attempted to explain why she had not made the payment as promised. The court denied this request, stating: "No. I'm sorry. No reason was given when she was on this witness stand. You didn't ask her and she didn't volunteer. So I can't find it was not done wilfully. If it wasn't done wilfully, she should have said why not. I didn't get my paycheck; my pay was late; I got sick; I had to pay a medical bill. No excuse was given whatsoever."

[8] The defendant did not appeal from this second finding of contempt.

to make the April and May, 2007 mortgage payments and that she had failed to sign the listing agreement or to return the calls of the Realtor. On May 10, 2007, the defendant filed an objection to the motion for contempt and a request to modify the court's orders with respect to the second contempt order. The plaintiff filed a fourth motion for contempt, dated May 15, 2007, claiming that the defendant refused to list the property, to allow a "for sale" sign to be placed on the property and to permit the property to be shown to potential buyers. Finally, a fifth contempt motion was filed by the plaintiff, alleging that the defendant failed to make the June, 2007 mortgage payment.

On July 30, 2007, the court held a hearing on all three pending motions. The plaintiff's counsel requested another finding of contempt and that the defendant be incarcerated. As an alternative to incarceration, counsel asked that the defendant be ordered to vacate the property and to execute a deed to the property in favor of the plaintiff.[9] The defendant's counsel argued that his client was entitled to half of the proceeds from the sale and that an evidentiary hearing was required before the property could be transferred solely to the plaintiff. The plaintiff's counsel responded that the defendant was not entitled to anything from the property because she had enjoyed its use for the past three and one-half years.[10]

After hearing further argument and without conducting an evidentiary hearing, the court ordered the defendant to vacate the property and to convey the property

[9] Counsel for the defendant offered to "stipulate right now to a judgment of partition and let the property get sold [by] the court-appointed committee, let the money get deposited in court and then we fight." The court noted that judgment was in place but that the defendant had not abided by its terms.

[10] The plaintiff's counsel later explained his position: "[E]ven if her interest was some minimal amount, her living there for all of this time without contributing toward this mortgage, I think, nullifies any interest that she has."

in its entirety to the plaintiff.[11] The court also stated that the defendant could file an action if she wanted to recover her financial interest from the sale of the property. Furthermore, the court again found the defendant to be in contempt. Title to the property ultimately was conveyed by judicial order to the plaintiff, and the defendant was given approximately two weeks to vacate the property. This appeal followed.[12] Additional facts will be set forth as necessary.

At the outset, we stress the importance of compliance with court orders and note that we in no way endorse the defendant's continual disregard for the court's orders. "The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction [over] persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril. *United States* v. *United Mine Workers*, 330 U.S. 258, 303, 67 S. Ct. 677, 91 L. Ed. 2d 884 (1947). [*A*]*n order issued by a court with jurisdiction . . . must be obeyed by the parties . . . .*" (Emphasis added; internal quotation marks omitted.) *Rocque* v. *Design Land Developers of Milford, Inc.*, 82 Conn. App. 361, 366, 844 A.2d 882 (2004).

Before discussing the specifics of the defendant's claims, we identify the scope of our review. In *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 444 A.2d 196 (1982), our Supreme Court stated: "[B]ecause this is an appeal from a judgment of civil contempt, our review is technically limited to questions of jurisdiction

[11] At one point, the court stated that incarceration remained an option if the defendant failed to sign the deed over to the plaintiff. Although the defendant never signed the deed, the court did not incarcerate her.

[12] Although the record does not contain a memorandum of decision or a signed transcript; see Practice Book § 64-1; we conclude that the transcript adequately reveals the basis of the court's decision. Accordingly we will review the claims raised by the defendant.

such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt." (Internal quotation marks omitted.) Id., 731. Our Supreme Court subsequently has explained the rationale behind the limited scope of appellate review of contempt findings. "This limitation originates because by its very nature, the court's contempt power . . . must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because: the injunction on which it was based was vague and indefinite . . . the findings on which it was based were ambiguous and irreconcilable . . . *the contemnor's constitutional rights were not properly safeguarded* . . . the penalties imposed were criminal rather than civil in nature . . . and the contemnor, through no fault of his own, was unable to obey the court's order." (Emphasis added; internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 692, 935 A.2d 1021 (2007); *Carasso* v. *Carasso*, 80 Conn. App. 299, 307, 834 A.2d 793 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1174 (2004). We now turn to the specific claims raised by the defendant in her appeal.

I

The defendant first claims that the court improperly violated her right to due process when it did not afford her a full hearing on the issues raised in the motions for contempt. Specifically she argues that she was "entitled to a hearing on the issue of her alleged noncompliance with the court's order and should have been afforded an opportunity to explain the facts and circumstances surrounding the plaintiff's motion for contempt." We agree.

We begin by setting forth some preliminary information regarding contempt. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *In re Jeffrey C.*, 261 Conn. 189, 196, 802 A.2d 772 (2002). We next identify the type of contempt found in the present case. "Contempts of court may also be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court." (Internal quotation marks omitted.) *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 150, 496 A.2d 476 (1985). The plaintiff alleged in his motion that the contemptuous behavior was the failure of the defendant to comply with the court's orders. As this occurred outside of the court's presence, it is properly classified as indirect contempt. See, e.g., *Duve* v. *Duve*, 25 Conn. App. 262, 269, 594 A.2d 473, cert. denied, 220 Conn. 911, 597 A.2d 332 (1991), cert. denied, 502 U.S. 1114, 112 S. Ct. 1224, 117 L. Ed. 2d 460 (1992).

We now consider whether the court found the defendant to be in criminal or civil contempt. Criminal contempt is conduct directed against the authority and dignity of the court, while civil contempt is conduct directed against the rights of the opposing party. *Board of Education* v. *Shelton Education Assn.*, 173 Conn. 81, 85, 376 A.2d 1080 (1977). "A contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public. . . . Sanctions for civil contempt may be either a fine or imprisonment; the fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained." Id.; see also *DeMartino* v. *Monroe Little League, Inc.*, 192 Conn. 271, 278, 471 A.2d 638 (1984). As the purpose of the sanctions in the present case was to compensate the plaintiff, we conclude that the

contempt in the present case is properly classified as civil, rather than criminal. See, e.g., *Ullmann* v. *State*, 230 Conn. 698, 709, 647 A.2d 324 (1994) ("it is the nature of the relief itself that is instructive in determining whether a contempt is civil or criminal").

In his third motion for contempt, the plaintiff alleged that the defendant had failed to make the April and May, 2007 mortgage payments as previously ordered by the court. The plaintiff further claimed that the defendant had failed to sign the listing agreement and failed to cooperate with the real estate agent. In response, the defendant filed an objection. She stated that she had executed the listing agreement and attached a copy to her objection. She further claimed that she had tendered the April, 2007 payment. Finally, she indicated that she was unable financially to pay the May, 2007 mortgage payment or to pay the attorney's fees that had been awarded in favor of the plaintiff. In support of this objection, the defendant submitted a financial affidavit.

The plaintiff's fourth motion for contempt alleged that the Realtor had indicated that the defendant had refused to allow (1) the property to be listed on the MLS service, (2) a sign to be placed on the property and (3) access to the property for showing to potential buyers. The defendant did not file a response to this motion. Finally, the plaintiff's fifth contempt motion alleged that the defendant had failed to make the June, 2007 mortgage payment. The defendant objected to this motion, again claiming that she financially was unable to make the mortgage payments.

At the July 30, 2007 hearing, the plaintiff requested a finding of contempt and either incarceration of the defendant or an order requiring her to vacate the property immediately. The defendant's counsel stated: "[W]e're entitled to a hearing on what she's entitled to

in this real estate, period. There has got to be a hearing, an evidentiary proceeding." Counsel then argued that the defendant did not "have the money [to pay the mortgage]. Look in the file; there is a financial affidavit. She can't afford it; she's moving out. . . . [S]he thought she could get a mortgage." After declaring its intention to order ownership of the property transferred solely to the plaintiff and to have the defendant vacate the property, the court then found the defendant in contempt.

"A finding of indirect civil contempt must be established by sufficient proof that is premised on competent evidence presented to the trial court and based on *sworn* testimony. . . . A trial-like hearing should be held if issues of fact are disputed. . . . Due process of law requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. . . . Because the inability of [a party] to obey an order of the court, without fault on his part, is a good defense to a charge of contempt . . . the [party] had the right to demonstrate that his failure to comply with the order of the court was excusable." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Kelly* v. *Kelly*, 54 Conn. App. 50, 59, 732 A.2d 808 (1999); see also *Gattoni* v. *Zaccaro*, 52 Conn. App. 274, 284–85, 727 A.2d 706 (1999).

Before the July 30, 2007 hearing, the defendant twice had been found in contempt by the court. Neither of those rulings, however, had been appealed. In response to the subsequent motions for contempt, the defendant claimed, for the first time, that she was unable financially to make the payments. In other words, she presented a defense to the charge of contempt and

therefore had the right to demonstrate that her noncompliance was excusable. *Kelly* v. *Kelly*, supra, 54 Conn. App. 59; *Gattoni* v. *Zaccaro*, supra, 52 Conn. App. 284–85; see also *Shapiro* v. *Shapiro*, 80 Conn. App. 565, 569, 835 A.2d 1049 (2003). Specifically, she claimed her financial inability to make mortgage payments starting in May, 2007. As noted previously, "[t]he inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt. . . . The contemnor must establish that he cannot comply, or was unable to do so." (Internal quotation marks omitted.) *Keeney* v. *Buccino*, 92 Conn. App. 496, 513–14, 885 A.2d 1239 (2005); *National Loan Investors, L.P.* v. *World Properties, LLC*, 79 Conn. App. 725, 738 n.13, 830 A.2d 1178 (2003), cert. denied, 267 Conn. 910, 840 A.2d 1173 (2004); *Berglass* v. *Berglass*, 71 Conn. App. 771, 777, 804 A.2d 889 (2002).

The defendant was denied her right to present evidence regarding her inability to comply with the court's order regarding payment of the mortgage. No sworn testimony was presented to the court, and the defendant's financial affidavit, which had been attached to her motion, was not admitted into evidence.[13] The sole basis for the finding of contempt appears to have been the representations of the plaintiff's counsel. "A judgment of contempt cannot be based on representations of counsel in a motion, but must be supported by evidence produced in court at a proper proceeding." (Internal quotation marks omitted.) *Kelly* v. *Kelly*, supra, 54 Conn. App. 60; *Gattoni* v. *Zaccaro*, supra, 52 Conn. App. 284; see also *Cologne* v. *Westfarms Associates*, supra, 197 Conn. 153; *People's Bank* v. *Perkins*, 22 Conn. App. 260, 263–64, 576 A.2d 1313 (in absence of sworn testimony, presentation of argument by counsel constitutes improper basis for determining factual issue), cert.

---

[13] We note that there is nothing in the record to suggest that the court reviewed or examined the defendant's financial affidavit.

denied, 216 Conn. 813, 580 A.2d 58 (1990); *Nelson* v. *Nelson*, 13 Conn. App. 355, 366–67, 536 A.2d 985 (1988). In the present case, the third finding of contempt was not based on evidence, but on the representations of counsel during the July 30, 2007 hearing. We conclude that this finding of contempt, therefore, was improper. Accordingly, we reverse the judgment of July 30, 2007, granting the plaintiff's motions for contempt and remand the matter to the trial court with instruction to hold a hearing with respect to the plaintiff's motions.

II

The defendant also claims that the court imposed a punitive sanction in violation of Practice Book § 1-21A. Specifically, she argues that the court improperly awarded the plaintiff sole ownership of the property.[14] We agree with the defendant.

We begin by identifying the legal principles germane to the defendant's claim that the court improperly imposed a sanction following the findings of contempt. Our Supreme Court has explained that "[s]anctions for civil contempt may be either a fine or imprisonment; the fine may be remedial or it may be the means of coercing compliance with the court's orders and compensating the complainant for losses sustained. . . . In civil contempt the [punishment] must be conditional and coercive and may not be absolute." (Citations omitted; internal quotation marks omitted.) *Connolly* v. *Connolly*, 191 Conn. 468, 482, 464 A.2d 837 (1983). When a fine is compensatory, the contemnor need not be offered the opportunity to purge herself of the contemptuous behavior. See *In re Jeffrey C.*, supra, 261 Conn.

---

[14] As the plaintiff sought the remedy of a court order awarding him the defendant's interest in the property, it follows that this issue may arise upon remand. We therefore will address this claim. See, e.g., *McTigue* v. *New London Education Assn.*, 164 Conn. 348, 356, 321 A.2d 462 (1973).

198; *Rocque* v. *Design Land Developers of Milford, Inc.*, supra, 82 Conn. App. 367–68.

Before discussing the specifics of the defendant's claim, we identify the applicable standard of review. As we previously stated, our Supreme Court set forth the general standard of review with respect to civil contempt. See *Papa* v. *New Haven Federation of Teachers,* supra, 186 Conn. 731. In *Papa,* the court reviewed the claim that the penalties imposed by the trial court were improper and an abuse of discretion. Id., 738. "These claims are reviewable in an appeal from the contempt judgment, *because the contemnor must have some remedy for* unauthorized or *excessive penalties.*" (Emphasis added.) Id., 737; see also *National Loan Investors, L.P.* v. *World Properties, LLC,* supra, 79 Conn. App. 739–40 (court abused discretion by awarding fine on basis of irrelevant information); *Lord* v. *Mansfield,* 50 Conn. App. 21, 34, 717 A.2d 267 ("[b]ecause a compensatory fine may be imposed as part of a civil contempt, our sole remaining inquiry is whether the trial court abused its discretion"), cert. denied, 247 Conn. 943, 723 A.2d 321 (1998). Accordingly, we review this claim pursuant to the abuse of discretion standard.

"Our law regarding judicial discretion is equally well settled. Judicial discretion is always a legal discretion, exercised according to the recognized principles of equity. . . . The action of the trial court is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . The trial court's discretion imports something more than leeway in decision making and should be

exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice." (Citation omitted; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 534–35, 710 A.2d 757 (1998). Guided by these principles and that standard of review, we now turn to the defendant's claim.

The court's order of sanctions following the third finding of contempt awarded the plaintiff all of the defendant's interest in the property and required her to vacate the property within two weeks. The terms of the parties' agreement were that the defendant would pay the plaintiff $200,000 and that he would take that money and pay off the existing mortgage of approximately $140,000. At one point, the parties appeared to agree that the property had been appraised at $230,000. There was, therefore, approximately $90,000 of equity in the property held by the parties. The end result of this agreement would be that the plaintiff would net approximately $60,000 and that the defendant would own the property with approximately $30,000 in equity and subject to a mortgage of $200,000. The court's contempt sanctions, however, deprived the defendant of her entire interest of the property while the plaintiff solely owned the property and would obtain the equity of approximately $90,000.

In the present case, we conclude that a contempt sanction that deprived the defendant of her entire interest in the property constituted an abuse of discretion. Punitive sanctions are not permissible for civil contempt. There was no evidence before the court that the plaintiff sustained such significant losses to warrant such a draconian remedy. Although the court understandably was frustrated by the defendant's noncompliant behavior, its remedy was punitive and absolute. Furthermore, it was not designed to be coercive in nature. The court's sanction effectively obliterated the

judgment underlying the contempt proceedings, namely, the partition of the property. This sanction deprived the defendant of her one-half ownership interest in the property.

The judgment of contempt and resulting sanctions from the July 30, 2007 proceeding are reversed. The case is remanded for a hearing on the plaintiff's May 7, May 15, and June 18, 2007 contempt motions.

In this opinion the other judges concurred.