# DPF FINANCIAL HOLDINGS, LLC *v.* AMY LYONS ET AL.
## (AC 32107)

Harper, Beach and Schaller, Js.

Argued February 22—officially released June 14, 2011

*Christian A. Sterling*, for the appellant (named defendant).

*Matthew D. Gordon*, with whom, on the brief, was *Deirdre Dwyer Stokes*, for the appellees (plaintiffs).

*Opinion*

SCHALLER, J. The defendant Amy Lyons[1] appeals from the judgment of contempt rendered against her in an action brought by the plaintiff DPF Financial Holdings, LLC, to recover damages for trespass.[2] Specifically, the defendant claims that the court abused its discretion by improperly ordering her to pay to the plaintiff (1) $5000 in compensatory damages and (2) attorney's fees in the amount of $1200. We reverse in part the judgment of the trial court.

The court found the following relevant facts. The plaintiff owns two parcels of property in Killingly, lots 1 and 2, which it bought in 2006. The defendant purchased from the same grantor a parcel of property adjacent to

---

[1] Valley View Riding Stables, Mae Lyons, the planning and zoning department of the town of Killingly and Michael Sobieniak were also named as defendants in this action. Because none of these defendants is a party to this appeal, we refer in this opinion to Amy Lyons as the defendant.

[2] Douglas Fleming, the president of DPF Financial Holdings, LLC, filed the original complaint, appearing "pro se" on behalf of DPF Financial Holdings, LLC. The court ruled that Fleming's representation of DPF Financial Holdings, LLC, was "legally improper." Thereafter, Fleming obtained counsel to enter an appearance in lieu of his appearance. Subsequently, Fleming was added as a party plaintiff. In this opinion, we refer to DPF Financial Holdings, LLC, as the plaintiff and to Fleming by name.

the plaintiff's parcels after the plaintiff purchased them. The defendant's parcel consists of lots 3 and 4, which are located behind the plaintiff's property. The defendant's property was being used as a horse farm at the time the plaintiff purchased lots 1 and 2. The defendant holds an "access easement" over the plaintiff's lot 2, which provides access to her lots.

The common grantor, Valley View Riding Stables, had received subdivision approval with respect to all four lots. The approved subdivision map is on file in the Killingly town clerk's office. After purchasing lots 1 and 2, the plaintiff observed that the fence separating its property from the defendant's appeared to be partially located on the plaintiff's property rather than running along the common boundary. The plaintiff brought the issue to the attention of the common grantor, which informed the plaintiff that it would have to rectify the situation with the defendant.

Almost immediately after the defendant purchased her lots, the parties' relationship became contentious. Either the defendant or her agents moved the pins marking the boundary of the plaintiff's lot 2. At the time that the common grantor conveyed the two lots to the plaintiff, the legal description of the lots comported with the size and the boundaries contained on the site plan approved by the town. A portion of the defendant's fence was located on the plaintiff's property thereby constituting a trespass. The court credited the testimony of Robert Hellstrom, who had placed the boundary pins in accordance with the legal description on the deeds and the town approved subdivision map.

The defendant, whose farm is located at a higher elevation than the plaintiff's lots, constructed a pig pen from a modified commercial trailer and placed it close to the plaintiff's property without the requisite permits.

The pen obstructed the view from the plaintiff's property and housed pigs, chickens and other fowl close to the plaintiff's property line. Although the plaintiff had constructed a berm to prevent erosion, the defendant or her agents removed it, causing erosion of the plaintiff's property. The defendant also deposited animal remains and bones on the plaintiff's property, as well as discarded construction materials. By placing her animal pen so close to the plaintiff's property, the defendant directed animal fecal matter to flow from the pen onto the plaintiff's property. In addition, the animals continually trespassed on the plaintiff's property. The trespasses have resulted in the physical destruction of certain areas of the plaintiff's property.

On December 1, 2008, the court granted the plaintiff's application for a prejudgment temporary injunction, ordering the defendant to "immediately cease and desist from trespassing upon the plaintiff's land." On January 6, 2009, the plaintiff filed a motion for contempt alleging that the defendant continued to violate the court's order by adding livestock, erecting feed storage facilities and continuing to direct debris onto the plaintiff's property. On November 4, 2009, the court held a hearing on the plaintiff's motion for contempt. At that hearing, Fleming testified that when it rained, fecal matter would flow onto the plaintiff's property, the defendant failed to erect a berm along the entire common boundary, chickens roamed and laid eggs on the plaintiff's property and the defendant left rusty construction debris near the property boundary causing rust to wash onto the plaintiff's property.

The defendant testified that since the court order, she had not trespassed onto the plaintiff's property and that she had made the necessary improvements to address the court's temporary injunction. According to the defendant, the animals at the farm serve as "pet therapy" for children with special needs. She stated

that she had some chickens, a few ducks, rabbits and a mini Sicilian donkey, which served as a "seeing eye donkey" for some of the children. The parties dispute whether the defendant moved the animals and construction materials a sufficient distance from the plaintiff's property.

On March 11, 2010, in its memorandum of decision, the court found that, considering the testimony and evidence before it, the defendant had violated the court's temporary injunction order "by continuing to allow farm animals and other material to trespass upon the plaintiff's property." The court ordered the defendant to "immediately remove any and all debris, animals, equipment, machinery, structures, trailers, animal waste or by-products (including feces) from the plaintiff's property lines and place [them] a sufficient distance from the plaintiff's property lines to prevent further trespasses . . . ." The court also ordered the defendant to pay to the plaintiff "a fine in the amount of $5000 to compensate for the damage to the property resulting from the trespasses, together with attorney's fees of $1200 and the costs associated with having to present this matter to the court." This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court abused its discretion by ordering her to pay a $5000 compensatory fine pursuant to the court's finding of contempt. We agree that the court lacked a proper factual foundation to support the damages award.

We first set forth the applicable standard of review. A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in finding that the actions or inactions of the defendant were in contempt of its order.

See *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 590, 823 A.2d 1274 (2003).

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . Contempts of court may also be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court." (Citation omitted; internal quotation marks omitted.) *Edmond* v. *Foisey*, 111 Conn. App. 760, 769, 961 A.2d 441 (2008). The plaintiff in this case alleged in its motion for contempt that the defendant failed to comply with the court's order and, thus, because it occurred outside of the court's presence, the contempt is properly classified as indirect contempt. See id.

In determining whether the contempt was criminal or civil, we note that "[c]riminal contempt is conduct directed against the authority and dignity of the court, while civil contempt is conduct directed against the rights of the opposing party. . . . A contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public. . . . Sanctions for civil contempt may be either a fine or imprisonment; the fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained." (Citation omitted; internal quotation marks omitted.) Id. Because the purpose of the sanctions in the present case was to compensate the plaintiff, we conclude that the contempt in the present case is properly classified as civil, rather than criminal. Id., 769–70.

The defendant specifically argues that the court exceeded its discretion in ordering, pursuant to its finding of contempt, a compensatory damages award to the plaintiff because the court failed to determine whether (1) the defendant could purge herself of the contempt

and (2) the plaintiff suffered an actual loss. As to the defendant's first claim, we conclude that the court was not required to provide the defendant with an opportunity to purge herself of her contemptuous behavior. "When a fine is compensatory, the contemnor need not be offered the opportunity to purge herself of the contemptuous behavior." Id., 773. The opportunity for a contemnor to purge herself "is only a consideration when punishment, such as imprisonment or a noncompensatory fine, has been imposed in accordance with the finding of contempt." *In re Jeffrey C.*, 261 Conn. 189, 198, 802 A.2d 772 (2002). The court's order specifically stated that "[t]he defendant shall pay the plaintiff a fine in the amount of $5000 to *compensate* for the damage to the property . . . ." (Emphasis added.) In its memorandum of decision, the court credited Fleming's testimony that, after the court issued its temporary injunction order, the defendant continued to allow farm animals and other materials to trespass on the plaintiff's property. Thus, the court did not abuse its discretion by awarding a compensatory fine against the defendant without providing her the opportunity to purge.

As to the defendant's claim regarding the amount of the court's award of compensatory damages, we note that our Supreme Court has concluded that civil contempt proceedings may be used to compensate a complainant based on his or her actual loss. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. . . . Where compensation is intended, a fine is imposed, payable to the complainant. *Such fine must of course be based upon evidence of [the] complainant's actual loss*, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy. Civil contempt

proceedings are not punitive—i.e., they are not imposed for the purpose of vindicating the court's authority—but are purely remedial. . . . The United States Court of Appeals for the First Circuit [has] noted that it is well settled . . . that the court may, in a proceeding for civil contempt, impose the remedial punishment of a fine payable to an aggrieved litigant as compensation for the special damages he may have sustained by reason of the contumacious conduct of the offender. . . . [S]uch a compensatory fine *must necessarily be limited to the actual damages suffered* by the injured party as a result of the violation of the injunction. . . . The United States Supreme Court aptly has observed that [t]he absence of wilfulness does not relieve from civil contempt . . . . Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act." (Citations omitted; emphasis added; internal quotation marks omitted.) *DeMartino* v. *Monroe Little League, Inc.*, 192 Conn. 271, 278–79, 471 A.2d 638 (1984). In *DeMartino*, the court specifically stated that the trial court properly "confined its compensation . . . to [the plaintiff's] actual losses." Id., 280.

In the present case, the court failed to provide a factual basis for the amount of its award of compensatory damages. Although the court, in its memorandum of decision, acknowledged that the defendant's trespasses caused damage to the plaintiff's land, the plaintiff did not present any evidence as to the loss that it claimed to have sustained. We note, however, that during the November 4, 2009 contempt hearing, the court stated on the record: "I'm going to disallow anything that has to do with value that could be eventually damages at the end. It's not for today's limited issue as to whether or not the defendant has intentionally trespassed on the property of the plaintiff." The record does not reveal that the court's remark precluding evidence of value or loss was made with reference to any

offer of proof, nor did objections or argument by either party ensue. In the absence of any evidence of actual loss, however, we must conclude that the court's $5000 award had no factual support in the record. We conclude, therefore, that the court abused its discretion by imposing a compensatory fine without any showing of actual loss by the plaintiff. Because the court may effectively have precluded evidence as to loss by its remark to that effect, the parties are entitled to a hearing on damages to determine any loss that may have occurred as a result of the defendant's contemptuous conduct in violation of the court's order.

## II

The defendant also claims that the court abused its discretion by awarding attorney's fees in the amount of $1200. According to the defendant, the court received no evidence to provide a factual basis for the court's award. We agree.

"[O]rdinarily, courts in this country do not award attorney's fees to the prevailing party unless . . . the payment of such fees is provided for by statute. . . . The authority of the trial court to award attorney's fees following a contempt proceeding is well settled. Once a contempt has been found, [General Statutes § 52-256b (a)][3] establishes a trial court's power to sanction a non-complying party through the award of attorney's fees. . . . The award of attorney's fees in contempt proceedings is within the discretion of the trial court. . . . Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion." (Citation omitted; internal quotation marks omitted.) *Gina M. G.*

[3] General Statutes § 52-256b (a) provides: "When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt."

v. *William C.*, supra, 77 Conn. App. 594–95. In this case, the court ordered the defendant to pay attorney's fees to compensate the plaintiff for expenses incurred in having to bring this action.

The defendant contends that the court's award of attorney's fees and associated costs was arbitrary because the court failed to provide a basis for the award. The defendant argues that, because the court received no evidence supporting an award of attorney's fees, it abused its discretion by awarding $1200 to the plaintiff. In response, the plaintiff argues that, pursuant to *Gina M. G.*, "courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." (Internal quotation marks omitted.) Id., 595.

Although we acknowledged in *Gina M. G.* that courts may rely on their general knowledge as to attorney's fees, in that case we noted that "the court had been familiar with counsel's preparation and presentation of the case," and the defendant had presented evidence regarding attorney's fees. Id. Under those circumstances, we determined in that case that the trial court did not abuse its discretion by awarding attorney's fees in the absence of an evidentiary hearing. Id. In the present case, the record contains nothing to indicate that the court had before it any evidence of the preparation or presentation of the case by the plaintiff's counsel. The court did not hold a hearing on attorney's fees, nor did the plaintiff present evidence regarding attorney's fees. Although the plaintiff has appended to its appellate brief documentation of the attorney's fees in relation to the contempt hearing, that evidence is outside the record and not properly before this court. See *State* v. *Ovechka*, 292 Conn. 533, 547 n.19, 975 A.2d 1 (2009) ("well established principles governing appellate review of factual decisions preclude us from utilizing this material to find facts on appeal").

After a careful review of the record, we conclude that the court's award of attorney's fees had no factual basis. The court did not indicate nor did the record support the court's decision that "having to present this matter to the court" warranted attorney's fees of $1200. "Our Supreme Court has long held that there is an undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing. . . . We also have noted that courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described . . . ." (Internal quotation marks omitted.) *Bobinski* v. *Kalinowski*, 107 Conn. App. 622, 629, 946 A.2d 283, cert. denied, 289 Conn. 919, 958 A.2d 150 (2008). In *Bobinski*, although this court inferred the trial court's unstated reasoning for not awarding additional attorney's fees, we specifically noted that the trial court in that case had before it information with which to make that decision, including an affidavit and time sheets. Id., 629–30. In the present case, in which the record contains no evidence to support the award, the court may have considered its general knowledge regarding attorney's fees. *Gina M. G.* v. *William C.*, supra, 77 Conn. App. 595. The record is silent, however, as to that factor as well.[4] We, therefore, conclude that the court abused its discretion by awarding $1200 in attorney's fees without a factual basis for the award.

The judgment is reversed only as to the order of damages and attorney's fees and the case is remanded for a hearing on damages and attorney's fees with respect to the court's judgment of contempt.

In this opinion the other judges concurred.

[4] We also note that there is nothing in the record or transcript from the November 4, 2009 hearing from which we can determine the length of the contempt hearing.